IN THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| TECSEC, INC., | ) |
|         Plaintiff, | ) |
| v. | ) Case No. 1:10-cv-115-LMB/TCB |
| INTERNATIONAL BUSINESS MACHINES CORP., | ) |
|         Defendant. | ) |

**TECSEC'S BRIEF IN SUPPORT OF ITS MOTION FOR
DISCOVERY SANCTIONS AGAINST IBM**

Richard L. Wyatt, Jr. (admitted *pro hac vice*)
Michael A. O'Shea (admitted *pro hac vice*)
Brian M. Buroker (VSB No. 39581)
Michael A. Oakes (VSB No. 47425)
Ryan P. Phair (admitted *pro hac vice*)
HUNTON & WILLIAMS LLP
1900 K Street, N.W.
Washington, D.C. 20006-1109
Telephone:  (202) 955-1500
Facsimile:   (202) 778-2201

Thomas J. Cawley (VSB No. 04612)
Stephen M. Sayers (VSB No. 23066)
HUNTON & WILLIAMS LLP
1751 Pinnacle Drive, Suite 1700
McLean, Virginia  22102
Telephone: (703) 714-7400
Facsimile: (703) 714-7410

*Counsel for the Plaintiff TecSec, Inc.*

**Introduction**

TecSec needs the Court's assistance to prepare adequately for trial. There are three areas where IBM has continued to delay and stonewall the legitimate discovery needs of TecSec.

This Brief addresses why the Court should sanction IBM for failing to produce documents to TecSec and unilaterally cancelling a duly noticed deposition of an important witness upon whom a subpoena had been served.

**STATEMENT OF RELEVANT FACTS**

Early on this case, in the hope of saving time and expense, TecSec suggested to IBM that the depositions of IBM's employees should take place in the Eastern District of Virginia. IBM rejected this suggestion. Instead, IBM insisted that its own employees should give depositions where they are employed, rather than in the Commonwealth of Virginia. Indeed, IBM insisted that TecSec would have to go through the cumbersome process of having subpoenas issued, not through the Eastern District of Virginia, but through the federal courts of the States in which its various employees are situated. (*See* Exhibit No. 24.) IBM also insisted that TecSec should have to go through the equally, if not more, cumbersome procedures provided by the Hague Convention to take depositions of employees of IBM situated in Canada, or other countries. (*Id.*)

1. **This Case Came as no Surprise to IBM**

This patent infringement action did not come as any surprise to IBM. Indeed, IBM has been aware of the likelihood of this patent infringement action since at least October of 2008. At that time, litigation between the parties was ongoing. *See Federal National Commercial, Inc. v. International Business Machines Corporation,* Case No. 08-CV-01804 (D. Md.). Furthermore, TecSec's patent counsel sent IBM a letter putting it on specific notice of the patents-in-suit, and requesting that IBM take a license as other companies, such as Microsoft, had done if it intended

1

to continue to use TecSec's patented technology without TecSec's permission.  (*See* Exhibit No. 1.)  IBM knew that this demand letter would likely lead to additional litigation between the Parties, and it quickly called in its top intellectual property litigators, such as Jeff Zachmann, Fred Sedlarcik, and Gregory Mclaughlin, to begin preparing its defense.  (*See, e.g.,* Exhibit No. 34; IBM's Privilege Log at P-12, P-14, P-20, P-22.)  Indeed, IBM has asserted work product protection over all documents and information generated during this time period (*see id.*) which necessarily means that IBM must have anticipated litigation at that point.  Nonetheless, IBM failed to institute the required "litigation hold" to ensure that relevant documents were not destroyed as a result of such anticipation.  No such "litigation hold" was implemented by IBM until March 3, 2010.  (*See* Supplemental Response to TecSec Interrogatory No. 4, Exhibit No. 33.)

After a five-month investigation, and with the help of its litigators, IBM responded in March 2009 by sending TecSec a carefully worded letter stating that IBM had completed its evaluation of the TecSec patents, and determined that it had found no need for a license. (Exhibit No. 4.)  TecSec then continued its extensive pre-suit investigation and ultimately commenced this patent infringement action against IBM and several other global technology companies on February 5, 2010.  After the case was filed, IBM should have promptly instituted another "litigation hold" and should have begun preserving and collecting documents.  Instead, IBM waited an entire month to do so.

### 2. Mr. O'Donnell is a Key IBM Witness

IBM has admittedly failed to produce numerous documents from some of the most important witnesses in this case, including those listed on its own initial disclosures.  Those documents were not produced by the June 23, 2010 deadline or, in many cases, at all.  Bill

O'Donnell, for example, is the principal witness for IBM's WebSphere product, which in turn is one of the principal products that infringe TecSec's patents. Mr. O'Donnell was consulted by IBM's attorneys regarding TecSec's patents as far back as December 2008, when IBM received the original demand letter from TecSec's patent counsel. (*See* Exhibit No. 34; IBM Privilege Log at P-40, P-43, P-44 (served June 30, 2010).) He is one of only eight people that IBM identified in its initial disclosures as having any knowledge relevant to this case, and he is the *only* person relevant to WebSphere. (*See* Exhibit No. 7; IBM's Initial Disclosures at 4.) As TecSec searched IBM's production, however, it was unable to locate a single document that was authored by Mr. O'Donnell, or any document that even bore his name.

In its initial disclosures, IBM listed only eight employees who supposedly had personal knowledge of the facts relating to this patent infringement case. (*See* Exhibit No. 9.) TecSec accuses IBM of manufacturing 29 products that have infringed, and continue to infringe, TecSec's 11 patents.[1] "Bill O'Donnell" is one of the eight individuals identified by IBM as its principal witnesses. It was he who was supposedly "[k]nowledgeable" about various technical aspects of IBM's WebSphere Application Server products. *Id.* The WebSphere Application Server is one of the principal products accused by TecSec of infringing the patents-in-suit.

Apparently, Mr. O'Donnell works for IBM in, or close to, Madison, Wisconsin. IBM has insisted that TecSec would have to have a subpoena issued by the Western District of Wisconsin if it wished to depose Mr. O'Donnell. This is precisely what TecSec proceeded to do. (*See* Exhibit No. 31.) Mr. O'Donnell's deposition was set for July 13, 2010, a date that IBM

---

[1] Notably absent from this list was IBM's employee, Lynn Klar, the person who was the principal point of contact between IBM and TecSec prior to TecSec's Complaint being filed. IBM failed to produce any documents from Ms. Klar in it is initial "haystack" production of over 7 million pages of documents. TecSec knows that many such documents exist, because it has, in its possession, copies of documents passing between TecSec and Ms. Klar. Copies of those documents have been produced by TecSec to IBM.

3

suggested. Mr. O'Donnell's documents were due to be produced by July 9, 2010, pursuant to a subpoena. IBM's counsel accepted service of that subpoena on Mr. O'Donnell's behalf. (*Id.*) Production of these documents by July 9 would have only given TecSec the intervening weekend to review the documents, and to prepare properly for Mr. O'Donnell's deposition. In connection with this deposition, counsel for TecSec purchased non-refundable airline tickets, and made hotel reservations. (*See* Declaration of Adam G. Price, attached as Exhibit No. 38.)

### 3. IBM's Failure to Produce Any Documents Relating to Mr. O'Donnell

On the day that Mr. O'Donnell's documents were due to be produced for inspection to TecSec by IBM's counsel, IBM's counsel sent an e-mail to TecSec's counsel. This e-mail was sent at 5:17 p.m. that evening. (Exhibit No. 35.) In this e-mail, an attorney by the name of Akshay Deoras informed TecSec's counsel that "[d]uring preparation of Mr. O'Donnell, *we discovered additional documents*. Therefore, the deposition of Mr. O'Donnell will not go forward next week." *Id.* (emphasis added). Accordingly, IBM unilaterally cancelled this deposition on the very day that Mr. O'Donnell was due to produce documents covered by the subpoena served upon him. Those documents were not produced and have yet to be produced. Neither IBM nor Mr. O'Donnell sought a protective order, and neither filed a motion for deferral of this deposition.

On July 12, 2010, Mr. Deoras followed up his e-mail with another letter to TecSec's counsel, stating that the "deposition of Bill O'Donnell is not going forward tomorrow . . . We are processing Mr. O'Donnell's additional documents and will produce them as soon as they are available for production." (*See* Exhibit No. 36.) Without conferring with TecSec, or clearing an alternate date with TecSec's counsel, IBM arbitrarily rescheduled Mr. O'Donnell's deposition for "July 30 in Madison, Wisconsin." *Id.* The failure to consult with TecSec's counsel, or to clear

the arbitrarily set July 30 date with them, is notable. Multiple depositions are scheduled for the next two months, but the time available for them has been impermissibly compressed as a result of IBM's dilatory conduct. In view of IBM's stance that its employees must be deposed wherever they work, TecSec's counsel have had to make travel arrangements to travel to each of these remote destinations. Professional courtesy would seem to have demanded a preliminary inquiry as to whether the date unilaterally selected by IBM for Mr. O'Donnell's deposition would be convenient. No such courtesy was extended.

TecSec immediately protested this autocratic and unilateral cancellation of an important deposition, and pointed out that this deposition had been properly noticed, and that IBM had accepted the date for it, a date that was "secured by subpoena." (*See* Exhibit No. 37.) TecSec pointed out that IBM had neither sought TecSec's consent for the unilateral cancellation of this deposition, nor sought a protective order. *Id.* TecSec also pointed out that Mr. O'Donnell was the "Lead WebSphere Application Server security architect" and that the WebSphere Application Server is one of the "principal infringing product[s] in this case." *Id.* Indeed, TecSec pointed out that Mr. O'Donnell had been identified as one of only eight witnesses identified in IBM's Initial Disclosures, even though Mr. O'Donnell's involvement in this case stretched all the way back to 2008, as confirmed on the privilege log served upon TecSec by IBM. *Id.*; *see also* Exhibit No 34.

Mr. O'Donnell has documents that go back as far as December of 2008 (*see, e.g., id.* at 11). Mr. O'Donnell is an important, if not key, witness in this case, and he is one of the principal architects of the WebSphere Application Server. When TecSec initially put IBM on notice of its patent infringement contentions back in October of 2008, Mr. O'Donnell was one of the IBM employees who engaged in deliberations about "legal advice and strategy regarding TecSec's

5

patents." (*See* Exhibit No. 34 at 11.) IBM's recently-served Privilege Log, confirms this, so it is an inescapable conclusion that, when IBM began the process of collecting relevant documents in this case, it must have demanded of Mr. O'Donnell production of all of his relevant documents. As it turns out, however, IBM did not even issue its "litigation hold" until March 3, 2010, a month after the Complaint in this case had been filed.[2] (*See* Exhibit No. 33; Supplemental Response to TecSec Interrogatory No. 4.) Even though Mr. O'Donnell had been involved in deliberations about "legal advice and strategy regarding TecSec's patents" for over 18 months before this suit was filed, *none* of his documents were produced to TecSec in response to TecSec's First Request for Production of Documents by June 23, 2010, the date that the Court and ordered IBM to produce its documents to TecSec. Those documents have still not been delivered to TecSec as of the date of filing this Brief.

### 4. The Same Situation has Occurred with Another Key IBM Witness, Ms. Lynn Klar

This same scenario repeated itself with the deposition of the next scheduled IBM deponent, Lynn Klar. Ms. Klar is an IBM employee who has had extensive contacts with TecSec over the years. Her deposition was scheduled for Friday, July 16, 2010. In preparing for this deposition, TecSec was likewise unable to locate a single document in the IBM production bearing her name, even though TecSec's production to IBM contained scores of documents chronicling her numerous communications with TecSec. Once again, at the last minute, the Parties were forced to cancel this deposition when IBM disclosed that it had failed to produce her documents by the June 23, 2010 deadline set by this Court. Although IBM promised to do so by

---

[2] This subject is more fully explored in TecSec's Motion for Partial Reconsideration of the Court's June 25, 2010 Discovery Order Denying TecSec's Motion to Compel an Answer to Interrogatory No. 4, which addressed IBM's efforts to identify, maintain and preserve documents, including electronically stored information.

6

July 16, 2010, that date came and went, without any production being made. IBM's failure to comply with Magistrate Judge Buchanan's June 16, 2010 directive, therefore, is now having a ripple effect throughout the progress of this case. It is preventing TecSec from proceeding with depositions in an organized and orderly fashion. Since Mr. O'Donnell and Ms. Klar were the first two deponents whose depositions had been scheduled in this case, and both of whom were highly relevant custodians whose documents should have been collected and produced a long time ago, TecSec believes that there are scores of additional important IBM employees witnesses whose documents have not been produced by the June 23, 2010 deadline set by this Court. As a result, this same scenario seems likely to repeat itself unless this Court puts a stop to it.

## ARGUMENT

A trial court has broad discretion to sanction parties for discovery-related misconduct under Rule 37. *See Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976). Rule 37 allows the court to fashion sanctions appropriate to fit the circumstances. *See Toll Bros. v. Gore*, No. 3:07-CV-922008, U.S. Dist. LEXIS 92972, at *11 (N.D. W.Va. Nov. 14, 2008) (quoting *Guidry v. Cont'l Oil Co.*, 640 F.2d 523, 533 (5th Cir. 1981)) ("The sanctions enumerated in Rule 37 are flexible and 'may be applied in many or varied forms as the court desires by exercising broad discretion in light of the facts of each case.'")

IBM is a multi-national corporation with billions of dollars in annual revenues. It is unlikely to be impressed or deterred by the imposition of financial sanctions. Instead, TecSec requests that the Court fashion a creative sanction that is narrowly and specifically directed at IBM's misconduct: an Order directing IBM to make Mr. O'Donnell, and all IBM witnesses, available for their depositions in the Eastern District of Virginia. This would be fully concordant

7

with the letter and spirit of the Federal Rules of Civil Procedure, that strive for the "just, speedy and inexpensive" determination of every action and proceeding.  Fed. R. Civ. P. 1.

> 1. **IBM Should Be Sanctioned Under Rule 37 For Its Discovery-Related Misconduct.**

IBM alone is responsible for disregarding Magistrate-Judge Buchanan's order to complete its document production by June 23, 2010.  IBM, and IBM alone, is responsible for failing to locate Mr. O'Donnell's "additional" documents until July 9 and for its failure to deliver them to date.  The Court's discretion in imposing and fashioning appropriate sanctions "is not limited in any case of disregard of the discovery rules or court orders under them to a stereotyped response."  *Bates v. Firestone Tire & Rubber Co.*, 83 F.R.D. 535, 539 (D. S.C. 1979).  The text of Rule 37 may provide for certain specific sanctions, but "[t]he sanctions enumerated in the rule are not exclusive and arbitrary but flexible, selective, and plural."  *Id*.

> 2. **Beyond Rule 37, IBM Can—And Should—Be Sanctioned Under This Court's Inherent Powers For Its Discovery-Related Misconduct.**

It is clear that IBM is attempting to maintain control over TecSec's access to its employees while, at the same time, avoiding responsibility for its failure to make them available for a deposition.  IBM cannot have it both ways.  IBM refused to abide by the practical and efficient custom of agreeing to produce Mr. O'Donnell pursuant to a deposition notice.  *See, e.g.*, *U.S. v. Afram Lines (USA), Ltd.*, 159 F.R.D. 408, 414 (S.D.N.Y. 1994) ("Since a current employee of a party is within that party's practical control, it is often sensible to require the employee to appear pursuant to notice.").  It insisted that TecSec formally subpoena Mr. O'Donnell's appearance through the Western District of Wisconsin.  Yet, when TecSec did exactly as IBM had directed, IBM decided that it could ignore the very subpoena upon which it had insisted and cancelled Mr. O'Donnell's deposition at the last minute.  IBM did not file a motion for a protective order.  It did not seek any other judicial relief.  It simply did as it wished.

8

This abuse of the discovery process is sanctionable under the Court's inherent powers, and "the district court may use as many and as varied sanctions as are necessary to hold the scales of justice even." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 169 F.R.D. 598, 614 (D.N.J. 1997). Only the Court can stop IBM from repeating this example of unilaterally cancelling depositions secured by subpoenas from its sister Courts.

### 3. IBM's Failure to Produce Documents and Its Other Stonewalling Is Having An Adverse Effect on the Discovery Process in This Case

The combined effect that IBM's failure to honor its discovery obligations, its representations to this Court, and this Court's June 16, 2010 directive has had on the existing discovery schedule set by Judge Brinkema is significant and potentially devastating. By the time this motion is heard, there will be *less than two months remaining* before the close of fact discovery. It appears that there are significant problems with IBM's document preservation and collection efforts, which IBM has gone to great lengths to try to shield from scrutiny. Indeed, it has been over three months since TecSec has first served its discovery requests, and IBM has *still* not completed its production of documents has yet to provide a single e-mail to TecSec. As a result, as of the date of this filing, there have been no depositions taken and the depositions of two very significant IBM witnesses have been cancelled. When TecSec attempts to compel such depositions by subpoena, without the benefit of relevant documents, the subpoenas are ignored and the depositions are cancelled. Accordingly, to maintain the existing discovery schedule set by Judge Brinkema, TecSec needs to know that IBM's production is complete and that IBM is not withholding anything if it is to be able to proceed with depositions in the remaining time available. The only way to do that is for this Court to enforce its June 16, 2010 directive that all responsive documents must be produced to TecSec, *including* all documents from key witnesses, like Mr. O'Donnell and Ms. Klar.

9

At this point, moreover, TecSec is most concerned about the effect that IBM's actions have had on the existing schedule set by Judge Brinkema, and believes that this Court needs to order certain relief relating to case management, including the relief requested in TecSec's related motions, in order to get this case back on track:

- IBM should be compelled to produce any and all documents that have not yet been produced within three (3) days of the entry of this Order or be sanctioned at a set amount per day for each day thereafter that will be sufficient to deter future violations. As explained in TecSec's accompanying motion, any general objections asserted by IBM should be overruled or deemed waived.

- IBM should be compelled to provide deposition availability dates for its witnesses within fourteen (14) days of a request by TecSec for such dates and should certify at least seven (7) days before any such deposition that all documents and e-mails have been produced from the deponent's files. If IBM refuses to comply, IBM should be sanctioned at a set amount per day for each day thereafter that will be sufficient to deter future violations.

- As explained in TecSec's accompanying motion, IBM should be compelled to fully respond to Interrogatory No. 4 by providing, *inter alia,* the "facts" regarding its preservation and collection efforts, such as the names of the custodians from which IBM is collecting documents, the dates they were told to begin preserving and collecting documents, and the types of electronically stored information that IBM has in its possession. The provision of such information is commonly exchanged in civil litigation, has already largely been ordered by this Court with respect to e-mail, and is necessary to ensure that IBM has preserved and collected documents from relevant sources going forward in compliance with this Court's orders. Otherwise, IBM will continue to shroud its discovery deficiencies in secrecy and TecSec will only learn of them when they necessitate the cancelling of additional depositions.

Moreover, since IBM's failure to comply with the June 16, 2010 directive has resulted in the cancellation of at least two depositions already, and has created a situation where the Parties will likely need to triple- and quadruple-track depositions on the same day going forward if the existing schedule set by Judge Brinkema is to be met, IBM should also be required to make all of its witnesses available for deposition in the Eastern District of Virginia. This remedy, which is consistent with Local Civil Rule 30(a), and the fact that IBM has filed a Counterclaim in this case, will allow the parties to depose multiple witnesses at a single location on the same or

consecutive days in the limited remaining time available. This is the only way that the Parties will be able to complete deposition discovery in the remaining time available.

## CONCLUSION

TecSec requests the Court to enter an Order directing IBM to make Mr. O'Donnell, and other witnesses employed by IBM, available for their depositions in the Eastern District of Virginia, as a sanction for IBM's abuse of the discovery process.

Dated:   July 16, 2010

        Respectfully submitted,

        TECSEC, INC.

By:   /s/ Brian M. Buroker
      Richard L. Wyatt, Jr. (*pro hac vice*)
      Michael A. O'Shea (*pro hac vice*)
      Brian M. Buroker (VSB No. 39581)
      Michael A. Oakes (VSB No. 47245)
      HUNTON & WILLIAMS LLP
      1900 K Street, N.W.
      Washington, D.C. 20006-1109
      Telephone:  (202) 955-1500
      Facsimile:   (202) 778-2201

      Thomas J. Cawley (VSB No. 04612)
      Stephen M. Sayers (VSB No. 23066)
      HUNTON & WILLIAMS LLP
      1751 Pinnacle Drive, Suite 1700
      McLean, Virginia 22102
      Telephone: (703) 714-7400
      Facsimile: (703) 714-7410
      Service Email: tecsec@hunton.com

      Andrew G. DiNovo (*pro hac vice*)
      Jay D. Ellwanger (*pro hac vice*)
      Raymond Mort III (*pro hac vice*)
      Adam Price  (*pro hac vice*)
      DINOVO PRICE ELLWANGER
      & HARDY LLP
      7000 N. MoPac Expressway, Suite 350
      Austin, Texas 78731

        Telephone:  (512) 539-2626
        Facsimile:   (512) 539-2627
        Service Email: tecsec@dpelaw.com

*Attorneys for the Plaintiff TecSec, Inc.*

# CERTIFICATE OF SERVICE

I certify that on July 16, 2010, the attached TecSec's Brief In Support Of Its Motion For Discovery Sanctions Against IBM was electronically filed with the Clerk of the Court using the CM/ECF system, and that this system will issue an electronic notification of filing to the following:

*Attorneys for International Business Machines Corporation*:

John M. Desmarais, Esq.
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Service Email: jdesmarais@desmaraisllp.com

Jon Hohenthaner, Esq.
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022

Elizabeth Bernard, Esq.
KIRKLAND & ELLIS LLP
655 15th Street, N.W.
Washington, D.C. 20006

Craig C. Reilly, Esq.
LAW OFFICE OF CRAIG C. REILLY
111 Oronoco Street
Alexandria, Virginia 22314
Service Email: IBMCounsel@kirkland.com

/s/ Brian M. Buroker
Brian M. Buroker (VSB No. 39581)
HUNTON & WILLIAMS LLP
1900 K Street, N.W.
Washington, D.C. 20006
Phone: (202) 955-1500
Facsimile: (202) 778-2201
bburoker@hunton.com

*Attorney for the Plaintiff TecSec, Inc.*