UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| TECSEC, INCORPORATED, | . | Civil Action No. 1:10cv115 |
| | . | |
| Plaintiff, | . | |
| | . | |
| vs. | . | Alexandria, Virginia |
| | . | August 27, 2010 |
| INTERNATIONAL BUSINESS | . | 10:00 a.m. |
| MACHINES CORPORATION, et al., | . | |
| | . | |
| Defendants. | . | |
| | . | |

. . . . . . . . . . .

TRANSCRIPT OF MOTIONS HEARING
BEFORE THE HONORABLE LEONIE M. BRINKEMA
UNITED STATES DISTRICT JUDGE

<u>APPEARANCES</u>:

FOR TECSEC, INCORPORATED:      THOMAS J. CAWLEY, ESQ.
                               Hunton & Williams
                               1751 Pinnacle Drive, Suite 1700
                               McLean, VA 22102
                                 and
                               BRIAN M. BUROKER, ESQ.
                               MICHAEL A. OAKES, ESQ.
                               Hunton & Williams
                               1900 K Street, N.W.
                               Washington, D.C. 20006-1109


FOR INTERNATIONAL BUSINESS     CRAIG C. REILLY, ESQ.
    MACHINES CORPORATION        Law Office of Craig C. Reilly
    AND CISCO SYSTEMS, INC.:    111 Oronoco Street
                               Alexandria, VA 22314
                                 and
                               JOHN M. DESMARAIS, ESQ.
                               Desmarais LLP
                               230 Park Avenue
                               New York, NY 10169

(APPEARANCES CONT'D. ON FOLLOWING PAGE)

(Pages 1 - 21)

COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

<u>APPEARANCES</u>: (Cont'd.)

FOR EBAY, INC.:                    GARY M. RUBMAN, ESQ.
                                   SARAH M. HALL, ESQ.
                                   Covington & Burling LLP
                                   1201 Pennsylvania Avenue, N.W.
                                   Washington, D.C. 20004-2401
                                     and
                                   NITIN SUBHEDAR, ESQ.
                                   Covington & Burling LLP
                                   333 Twin Dolphin Drive, Suite 700
                                   Redwood Shores, CA 94065


OFFICIAL COURT REPORTER:           ANNELIESE J. THOMSON, RDR, CRR
                                   U.S. District Court, Fifth Floor
                                   401 Courthouse Square
                                   Alexandria, VA 22314
                                   (703)299-8595

1                        P R O C E E D I N G S

2              THE CLERK:  Civil Action 10-115, TecSec, Inc. v.

3     International Business Machines Corporation, et al.  Would counsel

4     please note their appearances for the record.

5              MR. BUROKER:  Brian Buroker, Hunton & Williams, for

6     TecSec, and with me here today is Tom Cawley and Michael Oakes.

7              THE COURT:  Good morning, gentlemen.

8              MS. HALL:  Good morning, Your Honor.  Sarah Hall for

9     defendant eBay.  I'm here with my colleagues, Nitin Subhedar and

10    Gary Rubman.

11             MR. SUBHEDAR:  Good morning.

12             THE COURT:  Good morning.

13             All right, now am I correct that I basically have two

14    motions on the docket today?  Actually, Mr. Reilly, you're here

15    for IBM.

16             MR. REILLY:  That's correct, Your Honor.

17             THE COURT:  Yeah.  You have a motion on as well,

18    correct?  Or there is a motion that affects your client as well?

19             MR. REILLY:  Yes, we do, Your Honor.  Just to allow the

20    Court to deal with this motion first and the chairs to clear out,

21    we --

22             THE COURT:  That's fine.

23             MR. REILLY:  Thank you, Your Honor.

24             THE COURT:  But since -- actually, just sit behind

25    counsel there so you stay inside the bar.

1      Am I correct that after I get done with you, some of you

2 at least are going down to see Judge Buchanan?  There are several

3 other motions that are pending before her.

4      MR. BUROKER:  Yes.  We have quite a few motions later

5 this morning.

6      THE COURT:  That's the impression I've gotten, all

7 right.  Well, let's take care then of eBay's motion first.  I

8 think that is appropriate.

9      Before me is eBay's motion to dismiss the plaintiff's

10 second amended complaint or, in the alternative, a motion for

11 judgment on the pleadings.  Both sides have had a chance to fully

12 brief the issue, and I guess I still want to hear from TecSec,

13 because the bottom line is and the reason why I granted the first

14 motion to dismiss was the Court's concern that basically the

15 extent of eBay's liability appeared from the first amended

16 complaint to essentially rest upon the degree to which PayPal

17 might be liable, and so what I want to make sure I am clear about

18 from TecSec is the following:

19      If PayPal were to be found not to have infringed any of

20 the plaintiff's patents as claimed in the current complaint,

21 second amended complaint, would there be anything left upon which

22 you could truly go forward against eBay?

23      MR. BUROKER:  And, Your Honor, I think the answer to

24 that question now based upon the second amended complaint is that

25 there is independent acts of infringement that we've alleged

1  relating to eBay's system that aren't dependent upon or wouldn't

2  be resolved based upon a finding of noninfringement as to PayPal,

3  and that is the five separate payment systems that eBay allows its

4  customers, which in this case are its sellers, to pay its sellers'

5  fees to eBay.

6          Now, there's some argument in the reply brief to eBay

7  that those are actually PayPal systems.

8          THE COURT:  That's my concern, because if that's the

9  case -- assume hypothetically that is the case, that is, that

10  these other systems or these payment systems that eBay has all

11  involve as a critical component this PayPal button or whatever

12  you-all are talking about and PayPal is found to have no

13  liability.  Doesn't that wipe out the case against eBay?

14          MR. BUROKER:  Well, no, Your Honor, it doesn't, because

15  these are eBay systems.  The pages that we've collected and

16  printed -- and I think if you want to walk through them, they're

17  exhibits to -- Exhibit 8 to Mr. Rubman's first declaration -- the

18  pages are all eBay pages.  They've made a system that collects the

19  information, that we believe labels it and encrypts it according

20  to the '702 and does the XML-based encryption according to the

21  '433 patent family that is not dependent upon PayPal's liability.

22          So, you know, if PayPal -- there's a lot of reasons that

23  PayPal could be found not to infringe, so I'm trying to

24  contemplate all of those, but there are ways in which PayPal would

25  be found not to infringe that there would be an independent and

1    separate basis to assert infringement against eBay based upon

2    these five items we've identified that eBay made and that eBay

3    uses, and that's what we've tried to allege in the new second

4    amended complaint.

5            THE COURT:  All right.  Does eBay want to respond to

6    that?

7            MR. RUBMAN:  Thank you, Your Honor.  As set forth in our

8    briefs -- first of all, a couple of points.  Each of those five

9    systems that they are referring to are newly accused products

10   which were never mentioned before, including by May 12, when they

11   were supposed to identify all accused devices.

12           Putting that aside, if you look at not only their

13   complaint, which makes it, I think, crystal clear, but also their

14   infringement contentions, which makes it even clearer, for each

15   and every element of every single claim that they've asserted

16   against us, they're relying on PayPal evidence almost exclusively,

17   and we can walk through their infringement contentions or their

18   complaint.  We've cited to some of the paragraphs in their, in

19   their second amended complaint, paragraph 48 or 73 are the first

20   two, where when they're describing these systems, the very systems

21   that Mr. Buroker just mentioned, you know, those paragraphs refer

22   to using PayPal, and, I mean, I can read them.  I know I quoted

23   them.  You probably are familiar with them.

24           THE COURT:  Yeah.

25           MR. RUBMAN:  But -- so, I mean, it's clear from, again

1  from the complaint itself and the contentions that, that really

2  they're depending on PayPal.  This case at least based on our

3  allegations is against PayPal, not eBay.

4          THE COURT:  Well, that's the impression that I have, and

5  that's why I started off by asking TecSec, so I'll give you one

6  more chance to show the Court why that's not an accurate

7  description of the situation.

8          MR. BUROKER:  Each of our claim charts for each element

9  of the claim we've made against eBay, there was a citation to

10 evidence from eBay, not just from PayPal, from eBay independently,

11 and so when we look, for example, at the references in -- and I

12 can pass this up if it would be helpful -- the references that we

13 cite are pages we've captured -- Web pages we've captured from

14 eBay's Web site, they're branded as eBay -- sorry.

15         THE COURT:  But what if what eBay is doing is they're

16 taking the PayPal button or the PayPal system for being able to

17 charge things, to encrypt the necessary information to be able to

18 charge it, but it's PayPal's system, but they then put their label

19 on it, so to speak?  It's still ultimately PayPal.

20         I mean, if PayPal is found not to infringe, then the

21 fact that eBay may have put an eBay label on that particular

22 methodology, eBay will get the benefit of the finding of

23 noninfringement.  Just having put their label on the PayPal

24 product isn't going to change, is it?  Does it change anything?

25         MR. BUROKER:  Well, that's a -- at this point, that's

1   speculation, because we don't know that that's the case.  In fact,

2   it looks quite the contrary, because the pages that we look at, if

3   you look at the source code behind those, and we've attached

4   those, that was in our claim charts, when you click on the button

5   on those pages, the response goes to an eBay server, not to a

6   PayPal server.

7            The HTML code that the button, if you click that button,

8   it goes to an address that is https://ardb.ebay.com.

9            There is no evidence that this system has anything to do

10  with PayPal.  In fact, it's to the contrary.  The evidence that

11  we've cited shows that it goes to an eBay server, and that's the

12  evidence that we believe demonstrates that we've got an

13  independent cause of action against eBay independent of PayPal,

14  and that's why we sued them separately, in addition to their use

15  of PayPal, which we believe is also sufficient, just as in any

16  other case when you have joint tortfeasors, you have the right to

17  sue multiple joint tortfeasors or both, and that's what we did

18  here, and that was what was at issue in the original first amended

19  complaint.

20           So there's two theories here.  I'm addressing the first,

21  where we've got direct acts of infringement by eBay, and their

22  pages show that it's eBay behind the scenes, not PayPal.

23           THE COURT:  Yes.

24           MR. RUBMAN:  If I can just briefly respond to that?  I

25  do think it might be helpful to look at their actual words in

1    their complaint and their infringement contentions.  You know,

2    Mr. Buroker just said that they identified all this evidence

3    against eBay.  Well, actually, the infringement contentions that

4    they served on us were almost the exact same ones they served

5    before, which still include all of the evidence against PayPal.

6    Then they added four or five new references.

7          For many of the elements of the claims, they cite to

8    just one reference to eBay, and that is -- and if -- at your

9    convenience, if you look at tab 8 -- or Exhibit 8 to our opening

10   report, it's, I think it's called reference 21, which is just a

11   statement on eBay's Web site that it preserves the privacy of its

12   customers, and that's the only support, only support for eBay that

13   they cite to for many of the elements, and this is quite clear

14   from their infringement contentions, putting aside the statement

15   itself in their complaint where they say that we're relying on

16   PayPal for these accused eBay services.

17         We've raised other arguments which we will not go into

18   now unless you want about the method claims and all of that,

19   but --

20         THE COURT:  All right.  Well, I've looked at the second

21   amended complaint.  I had looked at the earlier complaint when we

22   had the first motion to dismiss.  I've looked with care at all of

23   the briefs that were written on this issue, and I am satisfied

24   first of all that *McZeal* is not the standard by which we are now

25   evaluating complaints.  The *Iqbal-Twombly* much higher pleading

1  standard is there.  Plausibility of success is now the more

2  important way of looking at complaints.

3          Arguing that discovery will allow everybody to have a

4  complete picture, while an appealing argument, I don't think is a

5  good one to make any longer in trying to support a motion to

6  dismiss.

7          In this particular case, where I think the plaintiff has

8  had more than enough opportunities to get it straight, I'm still

9  not satisfied that this complaint satisfies the specificity now

10  needed in *Iqbal-Twombly*, and I am not satisfied that, that in

11  reality the plaintiff has been able to adequately separate eBay

12  from PayPal.

13          What I'm going to do is I am going to grant the motion

14  to dismiss the second amended complaint.  However, I'm not

15  dismissing the complaint with prejudice in this respect:  As you

16  know, I have stayed the plaintiff's claims as to all defendants in

17  this case except for IBM, because I have felt and I am

18  increasingly convinced that I was correct in my assessment that

19  the plaintiff's initial complaint is just so broad, covering so

20  many defendants and so many claims, that it's an absolutely

21  unmanageable piece of litigation or would have been in that

22  posture.

23          So what we have done is we've allowed the plaintiff to

24  go forward as to IBM.  A lot of the issues, perhaps not all, but I

25  suspect the core issues that would affect most of the other

1   defendants will at some point play out in the IBM case.

2          Depending upon how IBM is resolved, if there are things

3   left for TecSec, then we'll see which of the other defendants then

4   are going to have to come into the case, and at that point, if

5   TecSec can make a decent showing that they can, in fact, file yet

6   one last appropriate complaint against eBay, I'll have an open

7   mind about that.

8          But at this point, eBay is out of the case, all right?

9   So the second amended complaint is dismissed, but I am still

10  holding out there the possibility after this first round of

11  litigation is resolved that there might be a window in which

12  TecSec could come back in and file another complaint against eBay.

13  So it's sort of a half-victory for, I guess, both sides, but

14  that's what we're doing, and I think that therefore takes care of

15  that matter, because there's no discovery going on that affects

16  eBay right now.  There shouldn't be.

17          MR. RUBMAN:  There is not.

18          THE COURT:  Yeah.

19          MR. RUBMAN:  We anticipate it will come quickly once

20  they get to that case, and we don't want to, obviously, be in what

21  everyone else in this room is going through right now, but if I

22  could ask for just one clarification?

23          THE COURT:  Yeah.

24          MR. RUBMAN:  The issue that we briefed in our current

25  motion about the significance of the order requiring them by May

1   12 to identify all the accused products --

2         THE COURT:   And then five new products were included in

3   this.

4         MR. RUBMAN:   Right.   It was your April 30 order, I

5   believe; I may have the date wrong.   If we could just get clarity

6   on whether that order still applies, which we certainly hope it

7   does, with respect to eBay like everyone else?

8         THE COURT:   Well, I'm not going to give an advisory

9   opinion.   I mean, again, I really am pretty sure -- look, some of

10  the issues in the IBM litigation are going to involve the patents

11  themselves.   If the Court were to find, for example, inequitable

12  conduct or find that some or all of the claims are invalid, that

13  wipes it out for all the defendants.   That ends it.

14        If I find that IBM is liable, that, in fact, the

15  encryption systems, the various systems involved here do violate

16  the plaintiff's patents, and I find that the patents are valid,

17  that's going to give a lot of guidance to the remaining

18  defendants.

19        So I think to give you a hypothetical response to your

20  question is not appropriate at this point, all right?

21        MR. RUBMAN:   Thank you.

22        THE COURT:   All right, very good.

23        All right, I think that takes care of this round, and

24  so, Mr. Reilly, if you and the IBM folks will now come up?

25        Now, this is TecSec's motion to strike, and the issue in

1  that motion was IBM filed a second amended answer with new

2  affirmative defenses, had not received permission from the Court

3  to do so, and the sole argument made in the motion to strike

4  that's technically before the Court today was that because

5  permission from the Court had not been obtained, the second

6  amended answer and the affirmative defenses at this point should

7  be stricken.

8         So in some respects, I'm granting the motion to strike,

9  because you didn't get permission, and so now really there's not

10 an affirmative motion -- or maybe there is at this point -- from

11 IBM for leave to filed a second amended answer with the new

12 affirmative defenses.

13        Mr. Reilly?  I assume you're arguing this or not?

14        MR. REILLY:  Yes, Your Honor.  Are we addressing the

15 issues on the motion to strike or on the motion for --

16        THE COURT:  Well, the problem --

17        MR. REILLY:  -- leave to amend?

18        THE COURT:  Have you filed a formal motion to file a

19 second amended answer?

20        MR. REILLY:  We filed a motion for leave to amend and

21 filed an amended answer, yes.

22        THE COURT:  And you've noticed that for when?

23        MR. REILLY:  That apparently was put on Magistrate Judge

24 Buchanan's docket for next Friday and then switched to your docket

25 for next Friday.

1          THE COURT:  Right.  So that's the substantive motion.

2          MR. REILLY:  That's correct, Your Honor.

3          THE COURT:  And the defense -- so the plaintiff has not

4   had a chance to respond to that.

5          MR. REILLY:  They have not responded to that, and it's

6   my understanding they do want to respond to that.

7          THE COURT:  Right.  So I've granted their motion to

8   strike, because you didn't have permission.

9          MR. REILLY:  That's --

10         THE COURT:  You're now requesting leave to file a

11  pleading.

12         MR. REILLY:  Yes.

13         THE COURT:  And I'm going to decide that next week,

14  okay?

15         MR. REILLY:  Understood.

16         THE COURT:  I am concerned, though, because again, I've

17  been, I think, putting a lot of pressure on the plaintiff to stick

18  to deadlines, and I cannot recall, did I also give IBM a deadline

19  so that we again for the plaintiff are not going to have a

20  constantly shifting landscape?

21         MR. REILLY:  We do have those deadlines built into the

22  case, and, in fact, the deadline for asserting inequitable conduct

23  was a disputed issue that was brought before the Court at the Rule

24  16(b) conference, with TecSec asking that it be asserted earlier

25  in the case and IBM pointing out that they needed to take

1   discovery before it could assert it and proposed a later date in

2   the case, and Magistrate Judge Buchanan selected August 16 as the

3   date on which that pleading must be filed, and also, we would have

4   to move for leave to amend at that point.

5        We filed the amended pleading, and I believe I've

6   delivered the copy to both your chambers and Judge Buchanan's

7   chambers.  It is pleaded in more detail than the plaintiff's

8   complaint is, and we believe it would be sufficient.  However, the

9   plaintiffs want an opportunity to contest that.  That's fine.

10       One of their claims of prejudice was, oh, it's coming in

11  for the first time in August.  Well, that was debated back in June

12  when we were before Judge Buchanan, and she selected August 16 as

13  the date by which to make that assertion, so we did.

14       And they have all the detail of our contentions with

15  respect to inequitable conduct already.  It is not as if we simply

16  made a conclusory allegation and then where we're waiting for,

17  let's say, an extra discovery request on us to state our

18  contentions.  We actually attached the claim charts showing the

19  materiality of the references omitted and attributing the intent

20  to particular individuals, either the inventors or their counsel.

21       So we made an effort to be detailed in that pleading,

22  knowing, knowing that the Court would be testing it by the

23  *Twombly-Iqbal* standard.

24            THE COURT:  All right.

25            MR. REILLY:  But with respect to the motion to strike --

1   and again, because I think this plays into the other issues that

2   will be aired by the Court next week about the motion for leave to

3   amend, and we regret that this happened.  It is not -- I try to do

4   the right thing, but I also try to do things right as well, and we

5   just messed up on this particular filing date of filing the

6   amended pleading at that time but having forgotten that it also

7   needed to be accompanied by the motion for leave to amend, which

8   again we apologize for, and we certainly attempted to cure that

9   with our filing, but I think it blends into the other issues that

10  would be decided on a motion for leave to amend in any event --

11          THE COURT:  Right.

12          MR. REILLY:   -- and we would hope that the Court would

13  consider those arguments when we make them next week.

14          THE COURT:  By granting the motion to strike, in no

15  respect does that allow the plaintiff to argue that they're being

16  taken by surprise.  In other words, if August 16 was the deadline

17  that Judge Buchanan set and you met the deadline, the fact that

18  there was a procedural mistake made so that technically that

19  wasn't a technically legal filing is not going to sway me in this

20  case, so don't make that argument for next week.

21          I mean, the argument for next week has to be a

22  substantive argument, and maybe you won't ultimately be making it,

23  because if, in fact, that was what was agreed to, maybe not

24  happily agreed to but agreed to with Judge Buchanan, and it has

25  basically been done, I don't know what the basis would be for

1    opposing the defendant's request to amend, but we'll wait and see

2    what it looks like.

3            So I'm going to see you again then on the 10th.

4            MR. REILLY:  I think it's the 3rd.

5            THE COURT:  Or the 3rd?  It's the 3rd.  It's next week.

6    Okay, on the 3rd.  And that will be the only TecSec motion I think

7    that I have, right, from this case?

8            MR. REILLY:  As far as I know.

9            THE COURT:  All right.  Then you-all need to get

10   downstairs, because I'm sure Judge Buchanan is eagerly awaiting

11   you, all right?

12           MR. REILLY:  Thank you.

13           THE COURT:  Thank you.

14           MR. CAWLEY:  Your Honor, may I approach -- make a

15   presentation to the Court?

16           THE COURT:  I'm sorry.  Yes, Mr. Cawley.

17           MR. CAWLEY:  Thank you, Your Honor.  Your Honor, on

18   several occasions in this case, you have indicated your desire to

19   streamline the case, and obviously in a very dramatic way, you

20   stayed all the defendants except one, but even since then, for

21   instance, on July 22, you mentioned that you wanted to streamline

22   this case and, I think you said, do some triage in terms of how

23   the case would be presented at trial, and right now, we have a

24   motion titled Motion to Extend Pretrial Schedule and For a

25   Supplemental Conference to Address Case Management Issues.

1          It was referred to Judge Buchanan --

2          THE COURT:  Right.

3          MR. CAWLEY:  -- and we respect that, but I'm actually

4     just asking a question:

5          Is there a way or a mechanism by which we can resolve

6     the question of whether or not at trial we will be limiting the,

7     both the products that we will be accusing and having a

8     representative set of -- or reducing the number of patents that we

9     would be asserting, and correspondingly, we would want to have the

10    Court restrict the number of allegations of invalidity based on

11    prior art?

12         I'm just asking, you know, mechanically how is that to

13    be addressed, because obviously, Judge Buchanan couldn't do that,

14    I don't believe.

15         THE COURT:  I think the first thing, frankly, is whether

16    you-all, the people sitting in front of me, can work it out.  I

17    mean, I don't know if you have seriously sat down and tried to

18    work it out.

19         MR. CAWLEY:  Well, we have proposed a mechanism by which

20    the number, number of patent groups would go from eleven to five

21    and the number of products that would be accused would go down to

22    four; in other words, there would be two sets of patent groups

23    totaling five patents and four product groups would be infringing.

24         We would want in return, though, a restriction on the

25    number of prior art references that we would have to contend with.

1  They have objected, I mean, at least as far as I know, they don't

2  agree with that, but I'm just wondering if the Court ultimately is

3  going to do that, what would be the mechanism is all I'm asking.

4          THE COURT:  I would suspect that IBM probably would

5  agree to that if your position was that TecSec was jettisoning the

6  other claims.  In other words, what I believe I've seen in some of

7  the papers is what they don't want is, you know, ten rounds of

8  litigation in this case.

9          I would think, therefore, that if your proposal was --

10  and it's not an unwise proposal -- is basically a triage.  In

11  other words, TecSec looks at its best, its best case, these are

12  the strongest claims, these are the strongest patents we've got,

13  with the fewest potential prior art problems, etc., etc., and

14  these are the IBM products that are so clearly the major culprits,

15  and we're going to dismiss all the other claims with prejudice, I

16  suspect IBM would jump on that and be quite happy.

17          MR. CAWLEY:  Well --

18          THE COURT:  But what I think their concern is -- and I

19  would have problems with this, too -- is that, you know, there's

20  this one little group, and that gets litigated, and then let's say

21  that, that TecSec doesn't win on that.  Do we then go to the next

22  group?  This case would take ten years to try that way.

23          MR. CAWLEY:  Well, in a way, though, that's analogous to

24  the problem we're confronted with with respect to the other

25  defendants, because they've been put off.  We certainly haven't

1  dismissed them with prejudice.

2        I think it would be difficult for us to start dismissing

3  claims with prejudice especially since we are confronted with

4  3,800 pages of invalidity contentions.

5        THE COURT:  But part of that problem, Mr. Cawley, is the

6  way the plaintiff approached this case in the first case.  You

7  know, I've been around a long time, I think probably longer than

8  you, and I've never seen a patent case brought in this court with

9  the number of claims and the number of defendants.  I mean -- and

10  we talked about that the first time I saw it.  So that's the

11  problem.

12        I mean, you know, in this court, the plaintiff starts

13  the ball rolling, and the ball is certainly rolling.  So I think

14  you have to really think about it.  I mean, the triage approach,

15  that is, yeah, we're going to limit this case, but really limit

16  it, would probably sell with the defendant/defendants, but it

17  might not sell for you-all, but you really need to sit and think

18  about where the strength of this case is, because the impression I

19  get is that it's still very, very amorphous, and we're getting

20  close to deadlines, and I have to tell you I'm not inclined to see

21  any of these deadlines shifted.

22        In other words, you-all know what the limits are in

23  terms of time, and I think we're going to hold you to them.  I

24  mean, I'm not speaking for Judge Buchanan, but you'll have to see

25  what she does when you get downstairs.

1       Do I read IBM correctly, though, that if the plaintiff

2  were to limit this case and the limitations would include

3  dismissals with prejudice of certain claims or certain products,

4  that that's something that you-all would have fewer objections to?

5       MR. DESMARAIS:  You read us correctly.

6       THE COURT:  Okay.

7       MR. CAWLEY:  I'm not sure we're prepared to do that,

8  though.

9       THE COURT:  I understand that, but just think about it.

10      MR. CAWLEY:  Thank you.

11      THE COURT:  That's one way.  You asked me a way in which

12  this could be achieved, and I gave you what I thought was the way

13  in which it could be achieved.

14      MR. CAWLEY:  And I thank you.

15      THE COURT:  Okay.

16                      (Which were all the proceedings

17                       had at this time.)

18

19              CERTIFICATE OF THE REPORTER

20    I certify that the foregoing is a correct transcript of the

21  record of proceedings in the above-entitled matter.

22

23

24                    _____/s/_____
                              Anneliese J. Thomson

25