1

```
             UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF VIRGINIA
                  ALEXANDRIA DIVISION

TECSEC, INCORPORATED,        .    Civil Action No. 1:10cv115
                             .
         Plaintiff,          .
                             .
    vs.                      .    Alexandria, Virginia
                             .    February 4, 2011
INTERNATIONAL BUSINESS       .    10:45 a.m.
MACHINES CORPORATION, et al.,.
                             .
         Defendants.         .
                             .
. . . . . . . . . . . .

               TRANSCRIPT OF MOTION HEARING
         BEFORE THE HONORABLE LEONIE M. BRINKEMA
              UNITED STATES DISTRICT JUDGE
```

APPEARANCES:

FOR TECSEC, INCORPORATED:        THOMAS J. CAWLEY, ESQ.
                                 Hunton & Williams
                                 1751 Pinnacle Drive, Suite 1700
                                 McLean, VA 22102
                                   and
                                 MICHAEL A. OAKES, ESQ.
                                 Hunton & Williams
                                 1900 K Street, N.W.
                                 Washington, D.C. 20006-1109
                                   and
                                 ANDREW G. DiNOVO, ESQ.
                                 DiNovo Price Ellwanger &
                                 Hardy LLP
                                 7000 N. MoPac Expressway, Suite 350
                                 Austin, TX 78731



              (APPEARANCES CONT'D. ON PAGE 2)


                      (Pages 1 - 12)


       (COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES)

```
 1  APPEARANCES:  (Cont'd.)

 2  FOR INTERNATIONAL BUSINESS      JON HOHENTHANER, ESQ.
       MACHINES CORPORATION:        Kirkland & Ellis LLP
 3                                  601 Lexington Avenue
                                    New York, NY 10022
 4                                    and
                                    CRAIG C. REILLY, ESQ.
 5                                  Law Office of Craig C. Reilly
                                    111 Oronoco Street
 6                                  Alexandria, VA 22314

 7
    OFFICIAL COURT REPORTER:        ANNELIESE J. THOMSON, RDR, CRR
 8                                  U.S. District Court, Fifth Floor
                                    401 Courthouse Square
 9                                  Alexandria, VA 22314
                                    (703)299-8595
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

P R O C E E D I N G S

THE CLERK: Civil Action 10-115, TecSec, Incorporated v. International Business Machines, et al. Will counsel please note their appearances for the record.

THE COURT: Good morning.

MR. CAWLEY: Good morning, Your Honor. Tom Cawley for TecSec, Incorporated. With me is Michael Oakes and also Andrew DiNovo from the DiNovo Price firm, and Mr. DiNovo will be arguing for TecSec today.

THE COURT: All right, thank you.

MR. REILLY: Good morning, Your Honor. Craig Reilly for IBM together with my cocounsel, Jon Hohenthaner, who will argue on behalf of IBM.

THE COURT: All right. Now, before we get started, I'm glad you're all here today, because we're now in the midst of the other motions. I believe it's TecSec that has been submitting courtesy copies to chambers, which we very much appreciate, but they need to be in binders. Just having them loose papers, it's almost impossible to work with them.

So what I would like you to do to save some trees, go to my chambers when we're done. We'll give you back the boxes. If you can get them bound for us, you know, just in the big binders, the way the defendant did, and then get them back to us as quickly as you can, frankly, because we are working with them, that will help tremendously.

1         MR. DiNOVO:  Of course, Your Honor.
2         THE COURT:  All right.  Now, the second thing I want to
3  talk to you-all about, because again, assuming that I don't grant
4  summary judgment on all issues -- and that's a big assumption, but
5  we'll see -- I want to just double-check, because I have some
6  calendaring issues that are becoming somewhat tight, and I notice
7  from, from my calendar that I have an indication of seven days for
8  this trial.  Is that still in your view accurate from the
9  plaintiff's standpoint?
10        MR. DiNOVO:  Yes, Your Honor.  It's our understanding
11 that there was a liability phase.
12        THE COURT:  Right.  We were going to split damages off
13 from liability.
14        And is that also the defendant's view, about seven days?
15        MR. HOHENTHANER:  That was our view of what's currently
16 in the case, Your Honor.  I think Mr. Desmarais had raised earlier
17 that if all the patents and all issues are still in the case,
18 that's going to be very, very tight to finish in that period of
19 time.
20        THE COURT:  All right.  But that's a ballpark figure.
21        MR. HOHENTHANER:  I think so, Your Honor.
22        THE COURT:  All right, that's fine.  We're in good shape
23 on that then.
24        Now, the other thing is I want to think creatively about
25 this case, and I have to tell you that both the law clerk,

1  Ms. Bateman, who's working on this case, and I are fairly smart
2  people, okay, but we're not techies, and we're working awful hard
3  on it.  I think, frankly, I'm getting a good deal of the
4  technology, but it's taking a long time, but we're trying this
5  case before a jury, and I have often thought about how interesting
6  it might be in a high-tech case to actually try to develop a jury
7  pool that has some subject matter expertise, and I want you to
8  think about that.
9         For both sides, I think it would make this case -- it
10 would make the outcome in this case, in my view, more honest to
11 have jurors, and in this area of Northern Virginia, we could
12 easily get a pool of people who have IT experience so that, you
13 know, things like source code aren't going to be like black magic
14 to them.  That would get over, I think, some of the initial
15 problems of just vocabulary and understanding concepts.
16        Now, I'm not going to do this unless both sides are in
17 complete agreement, and the way I would do it is as follows:  It's
18 not going to be, you know, scientifically precise, but we do on
19 the initial juror questionnaire which the Clerk's Office sends out
20 to get the pool ask people to indicate how they're employed, and
21 you will see them say teacher, programmer, whatever.
22        I would -- what I would do is, No. 1, find out whether
23 we can do a computer sort, because I'm not sure yet whether it's
24 all electronic, and so that we could just have the computer look
25 for certain buzzwords which I might even allow you to assist me,

1  or companies like, you know, if somebody, well, they work for IBM,
2  they're not going to be in this case, but whatever, so that we
3  could at least do a sort, and that would increase the chances that
4  the pool of jurors we get have some of this expertise.
5          If we can't do it by computer, then I am prepared to
6  either myself or with my law clerks manually just go through, and
7  that would just be our manual look at the first 200 or 300 jurors
8  that are in that pool, to pull based upon the profession that
9  they've listed, and I will also because of the fact that certainly
10 IBM is so well known probably have to have a larger pool than I
11 normally would for a jury just so that we have more chances of
12 getting a jury that will not have a problem, but I want you to
13 think about that.
14         Now, I have once before in a, in a method patent case
15 also done something that some courts do, and that is to have
16 enabled the jurors to ask questions, and the way that's done --
17 and actually, it's very interesting.  We had very few.  Now,
18 again, the technology -- and I don't think Hunton & Williams --
19 was it your office that was in on that case?
20         MR. CAWLEY:  As I recall, Your Honor, on that *ePlus* case
21 a few years ago --
22         THE COURT:  That was it.
23         MR. CAWLEY:  -- they asked questions.
24         THE COURT:  But not a whole lot.
25         MR. CAWLEY:  No, but they -- as I recall, they sent up

1  the questions to you, and then you reviewed them, and I think you
2  might have even talked to us before you brought the jury back so
3  we could discuss it with you first.
4              THE COURT:  The way, the way that works -- and it does
5  slow things down, so it's not a favored practice in the Rocket
6  Docket, but I'm sort of interested in seeing how it would play out
7  in this case -- is after a witness has testified -- that's how
8  I've done it in the past; I've only done it once before -- so the
9  witness finishes his or her testimony, and then the jurors are --
10 then we basically have a brief recess, and the jurors can actually
11 write out questions.  They present them to me.  I run them by
12 counsel.
13             Sometimes, you know, you can't ask the question because
14 it involves hearsay or it involves something improper, but you can
15 perhaps figure out from the question what is troubling the jurors,
16 and then I would usually just ask that question of the witness,
17 and that's a very interesting technique.  There are courts, I
18 think in D.C., they do it more often than we do here.
19             I obviously explain to the jury that we won't
20 necessarily ask all their questions, but, you know, if nothing
21 else, frankly, if I were a trial lawyer, I would love it, because
22 it shows you how the jury is thinking about the case and what
23 they're getting and what they're not getting.
24             So I want you to just think about that.  I have an open
25 mind, but any of these sort of unusual approaches to using the

1  jury you both have to agree on.  I'm not going to have a fight
2  about it.  So if anybody doesn't like it, no discussion.  That's
3  it.  But anyway, I want you to think about it.
4          All right.  Then the last thing is the actual motion
5  that's before the Court today unless there are any other
6  housekeeping or logistical things that either side wants to raise
7  with me.  I know I'm going to see you again in the near future,
8  but anything else?
9                  (No response.)
10         THE COURT:  No, okay.  I'm sorry, there is one other
11 thing.  I know in the past there have been some business relations
12 or at least some negotiations between you-all about business
13 relations.  We -- we're into this case fairly thick at this point,
14 but has there been any talk or interest at all on your parts in
15 trying to see whether or not you can settle this dispute?
16         Because, you know, you may get some rulings that will be
17 real problematic for you, either side, and I intend to look very
18 carefully at this case, and I'm not afraid to rule on tough
19 issues.  You may get some surprises as to how I see this case and
20 how I see these patents and how I see these infringement claims.
21         But I did talk to Judge Buchanan, and she is available,
22 but she has certain windows when she won't be, and our time
23 pretrial is getting tight, so the window of opportunity for a
24 hard-core effort to settle is, is closing, and I can't reschedule
25 this case in the spring.  I have two other major cases coming down

1   the pike.  So this is it.
2              Has there been any interest shown in that respect?
3              MR. CAWLEY:  Your Honor, there were some discussions
4   several months ago.  There haven't been any in the last several
5   months.  We're available to discuss that at any time.
6              THE COURT:  Well, I would think if you were going to,
7   one of the things that IBM, you know, put out in their motion was
8   how outrageous they think the demand was.  Of course, opening
9   demands in my view are always outrageous.  I mean, it's just
10  supposed to get the pot boiling.
11             But more seriously now, I mean, we're getting down to
12  crunch time, and so, I mean, if the plaintiff were serious about
13  resolving this case and if IBM were truly interested, this is the
14  time to do it, not after I've ruled on summary judgment
15  infringement, because, I mean, it may be much more difficult to do
16  it then.
17             MR. CAWLEY:  Um-hum.
18             THE COURT:  And there still are, I would guess, a couple
19  of million dollars of attorneys' fees and litigation costs out on
20  the horizon, so it's really worth thinking about in my view, but
21  if you're going to do it, it's got to be serious.  So, I mean, the
22  plaintiff has to have a serious ballpark in which it's willing to
23  play, that's often how I used to do it when I would try to get
24  parties to think about settling, and the defendant needs to think
25  seriously about what it's interested in.

1    Again, a case like this, where there's a portfolio of
2 patents, I was sort of intrigued by whether or not the defendant
3 ever -- which is so big -- had ever thought about, you know,
4 buying out the plaintiff, whether that was ever even an offer, I
5 don't know.  I don't know whether buying their entire portfolio or
6 just a portion of the portfolio or taking a license to it, I mean,
7 there are lots of interesting options out there, and it may make
8 those options easier to achieve in this unsettled pretrial stage
9 than after the Court has ruled.
10    I mean, it certainly is true you could get a jury trial
11 and one side wins big or loses big and then there's still time to
12 settle, but it's harder.  Right now, neither side has taken a
13 significant hit, and so in that respect, it in my view makes
14 things more flexible.
15    So you need to think about this seriously, and if so,
16 you need to call Judge Buchanan's chambers quite soon, because I
17 think any settlement effort in this case would not be done in one
18 session or an hour or two.  I mean, from my experience, doing
19 cases like this when I was a magistrate judge, they'll take some
20 time, but it's time worthwhile if both sides are serious about it,
21 and I, frankly, think you should be.
22    MR. CAWLEY:  Yeah, we're amenable, Your Honor, and
23 depending on if it was Judge Buchanan, it might even be possible
24 to speed the process up, because there wouldn't have to be the
25 formal submittals of pretrial -- I mean, of settlement statements.

1  I don't know.  We're amenable if IBM is.
2              THE COURT:  Well, what you might want to do is think
3  about that ballpark.  If the ballpark has shifted -- because I
4  think the ballpark has to shift before the defendant is going to
5  come in and approach it seriously, all right?  I'm just telling
6  you that.  But anyway, all right.
7              The last thing then is the actual motion that's before
8  the Court, which is the defendant's motion for the Court to
9  reconsider its decision to grant summary judgment on two of the
10  claims.  I think the plaintiff is right that you-all got a
11  completely fair chance to thoroughly brief this issue on those two
12  patents, but I am sensitive to the fact that -- to the argument
13  you've made that in the Fourth Circuit, the approach to sua sponte
14  granting of summary judgment may be a bit different from the
15  Federal Circuit, and out of an abundance of caution, although I
16  frankly think my opinion was rock solid especially on *Fletcher*, if
17  that's a strong hint to you-all, I'm going to let you kill a few
18  more trees and grant you the relief you've requested.  However, it
19  ought not to take much briefing.
20              I don't expect to see a 30-page brief.  In fact, I'm
21  limiting you to about ten pages, all right?  Because you've
22  already -- you argued vigorously.  We had an oral presentation.
23  We had your, you know, the slide show on paper.  I mean, you
24  really put out, I would have thought because you wanted summary
25  judgment on that, as the plaintiff argued, I would have thought

1  you put forward everything you had, and with your best shot, you
2  didn't win, which meant it makes no sense to waste the jury's time
3  trying the case, but I'm going to allow you to do that, and I --
4  but I want it filed by the close of business Monday, because
5  again, most of it was in the original papers.
6          And then I want the response, if any, from the plaintiff
7  by close of business Wednesday, all right?  And then we'll resolve
8  it, all right?
9          So I think that takes care of everything that was on the
10 docket for today.  Is there anything further?  No?
11         MR. HOHENTHANER:  (Shaking head.)
12         THE COURT:  All right, we'll recess court for the day.
13         MR. CAWLEY:  Thank you, Your Honor.
14         THE COURT:  Thank you.
15                  (Which were all the proceedings
16                   had at this time.)
17
18                  CERTIFICATE OF THE REPORTER
19    I certify that the foregoing is a correct transcript of the
20 record of proceedings in the above-entitled matter.
21
22
23                              _____/s/_____
                                   Anneliese J. Thomson
24
25