UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| TECSEC, INC.,<br><br>     Plaintiff,<br><br>v.<br><br>ADOBE INC., *et al.*,<br><br>     Defendants. | Case No. 1:10-cv-00115-LO-TCB<br><br>**PUBLIC REDACTED VERSION** |

**DEFENDANT ADOBE INC.'S OPPOSITION TO TECSEC'S MOTIONS *IN LIMINE***

# <u>TABLE OF CONTENTS</u>

I.    RESPONSE TO MIL #1:  TO PRECLUDE ADOBE FROM RELYING ON
      PKZIP AND THE TISPEM PUBLICATIONS AS PRIOR ART ......................................1

      A.    The TISPEM Publications and PKZIP Were Not Excluded or Withdrawn ...........4
      B.    TecSec Has Been on Notice of Dr. Clark's Opinion that PKZIP
            Anticipates and Renders Obvious the Asserted Claims Since January 2018 .........7
      C.    TecSec Has Been on Notice of Dr. Clark's Opinion that the TISPEM
            Publications Render Obvious the Asserted Claims Since January 2018 ................8

II.   RESPONSE TO MIL #2: TO PRECLUDE ANY COMPUTERS, SOFTWARE
      OR OTHER MATERIALS THAT WERE NOT PRODUCED IN AN
      ACCESSIBLE FORM PRIOR TO THE CLOSE OF FACT DISCOVERY ....................9

      A.    Physical Exhibits.................................................................................................10
            1.    PKZIP on a Computer.................................................................................10
            2.    Other Physical Exhibits..............................................................................11
      B.    Documentary Exhibits .........................................................................................13
            1.    Documents Cited in Expert Reports ...........................................................13
            2.    Dictionary Definitions of "Recursively" ..................................................14
            3.    Publicly Available Articles Dated After the Close of Fact
                  Discovery ...................................................................................................15
            4.    Publicly Available Articles .........................................................................16
            5.    Damages Summary Exhibits.......................................................................17

III.  RESPONSE TO MIL #3:  TO PRECLUDE NON-INFRINGEMENT-RELATED
      OPINION TESTIMONY BY LANDWEHR, ROSENTHOL OR YDENS ....................19

IV.   RESPONSE TO MIL NOS. 4 AND 5:  TO PRECLUDE TESTIMONY BY
      RUSS MUNDY, DAVID BALENSON, OR WILLIAM BARKER................................20

V.    RESPONSE TO MIL #6:  TO PRECLUDE TESTIMONY BY DOUG BROTZ ...........21

VI.   RESPONSE TO MIL #7:  TO PRECLUDE TECSEC'S CLAIMS AGAINST
      OTHER PARTIES IN THE PRESENT LAWSUIT........................................................23

VII.  RESPONSE TO MIL #8:  TO PRECLUDE THE PRETRIAL WITHDRAWAL
      OR DISMISSAL OF PATENT INFRINGEMENT CLAIMS NOT BEING
      ASSERTED AT TRIAL OR PRODUCTS NO LONGER ACCUSED OF
      INFRINGEMENT...........................................................................................................25

VIII. RESPONSE TO MIL #9: TO PRECLUDE TESTIMONY BY ROY
      FOLLENDORE ..............................................................................................................28

IX.   CONCLUSION................................................................................................................30

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baxter v. United States*,
　No. 1:15-cv-633, 2016 WL 5073725 (E.D. Va. Sept. 20, 2016) .............................................12

*Carnegie Mellon University v. Marvell Technology Group, Ltd.*,
　No. 09-cv-290, 2012 WL 5463669 (W.D. Pa. Nov. 7, 2012)...........................................25, 26

*Centripetal Networks, Inc. v. Keysight Tech., Inc. & Ixia*,
　No. 17-cv-383, Dkt. 524 (E.D. Va. Sept. 25, 2018) ...............................................................18

*CertusView Techs., LLC v. S&N Locating Servs., LLC*,
　2016 WL 6915303 (E.D. Va. Mar. 7, 2016) ...........................................................................19

*Cormack v. N. Broward Hosp. Dist.*,
　No. 08-cv-61367, 2009 WL 2848998 (S.D. Fla. Aug. 28, 2009) ...........................................13

*Corning Inc. v. SRU Biosystems*,
　No. 03-cv-633, 2005 WL 2465900 (D. Del. Oct. 5, 2005).....................................................27

*Diehl v. Blaw-Knox*,
　No. 01-cv-770, 2004 WL 5509085 (M.D. Penn. Sept. 14, 2004)...............................17, 22, 29

*Disney Enter., Inc. v. Kappos*,
　923 F. Supp. 2d 788 (E.D. Va. 2013) .....................................................................................30

*DNT, LLC v. Sprint Spectrum, LP*,
　09-cv-21, 2010 WL 582164 (E.D. Va. Feb. 12, 2010) ..........................................................20

*Easley v. Haywood*,
　No. 08-cv-601, 2015 WL 6179522 (S.D. Ohio Oct. 21, 2015) ........................................13, 18

*Firehouse Restaurant Grp., Inc. v. Scurmont LLC*,
　No. 09-cv-618, 2011 WL 3555704 (D. S.C. Aug. 11, 2011)............................................15, 16

*In re Google AdWords Litig.*,
　2012 WL 28068 (N.D. Cal. Jan. 5, 2012), *rev'd on other grounds*, 802 F.3d
　979 (9th Cir. 2015)...................................................................................................................19

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
　136 S. Ct. 1923 (2016).......................................................................................................26, 27

*Hitkansut LLC v. U.S.*,
　127 Fed. Cl. 101 (2016).....................................................................................................13, 14

ii

*Illinois Tool Works, Inc. v. MOC Prod. Co.*,
  No. 09-cv-1887, 2012 WL 3561984 (S.D. Cal. Aug. 17, 2012)...............................................13

*Jain v. Abbott Labs, Inc.*,
  No. 13-cv-551, 2014 WL 7330805 (4th Cir. 2014) ..............................................................20

*Meyers v. Asics Corp.*,
  974 F.2d 1304 (Fed. Cir. 1992)...........................................................................................26

*Open Text S.A. v. Box, Inc.*,
  2015 WL 393858 (N.D. Cal. Jan. 29, 2015) .......................................................................19

*S. States Rack And Fixture, Inc. v. Sherwin-Williams Co.*,
  318 F.3d 592 (4th Cir. 2003) .............................................................................12, 14, 15, 29

*Simmons v. Morgan Stanley Smith Barney, LLC*,
  No. 11-cv-2889, 2014 WL 769290 (S.D. Cal. Feb. 25, 2014)...............................................29

*Smith v. Loudoun Cty. Pub. Sch.*,
  No. 15-cv-956, 2016 WL 9943214 (E.D. Va. Jan. 21, 2016) ...............................................29

*THK Am. v. NSK, Ltd.*,
  No. 90-cv-6049, 1996 WL 33398071 (N.D. Ill. Jan. 9, 1996)...............................................27

*Uniloc USA, Inc. v. Microsoft Corp.*,
  640 F. Supp. 2d 150 (D.R.I. 2009), *aff'd in part, rev'd in part*, 632 F.3d 1292
  (Fed. Cir. 2011)...................................................................................................................25

*United States v. Blackwell*,
  436 F. App'x 192 (4th Cir. 2011) .........................................................................................17

*United States v. Bray*,
  139 F.3d 1104 (6th Cir. 1998) .............................................................................................18

*United States v. Dish Network, LLC*,
  No. 09-cv-3073, 2016 WL 29244 (C.D. Ill. Jan. 4, 2016).....................................................14

*United States v. Foley*,
  598 F.2d 1323 (4th Cir. 1979) .............................................................................................18

*United States v. Porter*,
  821 F.2d 968 (4th Cir. 1987) ...............................................................................................17

*United States v. Rand*,
  No. 10-cv-182, 2011 WL 5037189 (W.D.N.C. Oct. 24, 2011) ............................................17

*WCM Indus, Inc. v. IPS Corp.*,
  721 Fed. Appx. 959 (Fed. Cir. 2018).....................................................................................25

**Statutes**

35 U.S.C. § 102................................................................................................................6

35 U.S.C. § 103.........................................................................................................2, 3, 5

35 U.S.C. § 285..............................................................................................................27

**Other Authorities**

Federal Rule of Evidence 403.....................................................................................26, 28

Federal Rule of Evidence 611(a) ............................................................................16, 17, 18

Federal Rule of Evidence 1006................................................................................16, 17

Federal Rule of Civil Procedure 26 ....................................................................21, 27, 29, 30

Federal Rule of Civil Procedure 26(a)(1) ............................................................................28, 29

Federal Rule of Civil Procedure 26(e)(1) ............................................................................29

\*All emphases added in brief unless otherwise noted.
\*\* All cites to "Ex." are to the Declaration of Rachel Weiner Cohen, filed concurrently herewith.

# I.    RESPONSE TO MIL #1:  TO PRECLUDE ADOBE FROM RELYING ON PKZIP AND THE TISPEM PUBLICATIONS AS PRIOR ART

When the Court issued its June 8, 2018 Order ("June 8 Order"), Adobe committed to (1) fully comply with the June 8 Order and (2) streamline its case for trial.  Adobe subsequently retained new trial counsel, who carefully re-evaluated its defenses (developed over the course of this almost nine-year litigation) and streamlined them further (much further).

The result of Adobe's focusing its case for trial was fully and fairly disclosed to TecSec in Adobe's August 21, 2018 "Notice of Streamlining of Issues for Trial." Dkt. 1178.  In addition to conceding that "there was direct infringement of the asserted claims . . . on at least one occasion, by Adobe itself," Adobe withdrew the vast majority of its invalidity defenses.  On its own accord, Adobe dropped its lack of written description, enablement, and inequitable conduct defenses, and promised to "narrow its anticipation and/or obviousness defenses to no more than one prior art system (including written descriptions of the system), and no more than three prior art publications" within three weeks—well in advance of the September 28, 2018 deadline for pretrial disclosures and the December 10, 2018 trial date.  *Id*. at 1-2.

True to its word, on September 6, 2018, Adobe served its Second Supplemental Disclosure, narrowing its asserted prior art to the promised "one prior art system"—"PKZIP"—and "no more than three prior art publications"—"RFC 1113," "Galvin," and "System/Subsystem Specification."  Dkt. 1200-3 at Ex. A.  And because the "three prior art publications" relate to the same technology (Trusted Information Systems Privacy Enhanced Mail or "TISPEM"), they reduce to just a single obviousness combination.  In other words, Adobe disclosed the one (1) anticipation/single reference obviousness defense, and the one (1) combination obviousness defense it will present at trial.  Adobe also reiterated its offer to present its invalidity expert, Dr. Clark, for the re-deposition contemplated by the June 8 Order.  *Id.*

1

For three weeks, TecSec raised no objection.  TecSec could have timely objected to Adobe's disclosures, but chose not to.  TecSec could have re-deposed Dr. Clark, but chose not to. Instead, on the eve of pretrial disclosures, TecSec disclosed *for the first time* it would seek to exclude *both* of Adobe's remaining invalidity defenses because the underlying prior art references were purportedly (1) excluded by the Court's June 8 Order (the TISPEM publications), or (2) voluntarily dropped (the PKZIP system).  Dkt. 1200-4 at 1.  TecSec is wrong on both counts, and its effort to effectively obtain summary judgment of validity is improper.

Regarding the TISPEM publications, TecSec contends that the June 8 Order precludes Dr. Clark from testifying that the *publications* themselves are prior art that renders the asserted claims obvious.  Dkt. 1199 at 5-6.  That is neither a reasonable nor fair reading of the June 8 Order. The Court held that Dr. Clark's opinions regarding a *non-prior art* TISPEM *system* impermissibly rely on his own *ipse dixit*, and thus precluded him from testifying about the *non-prior art* TISPEM *system*.  Dkt. 1152 at 5-6.  The TISPEM *publications* (and what they disclose to persons of ordinary skill) do not raise these concerns, and are not within the scope of the June 8 Order.[1]

Regarding PKZIP, TecSec's assertion—that Adobe dropped PKZIP as an asserted prior art reference by omitting it from its June 22, 2018 "Supplemental Disclosure Pursuant to the Court's Order of June 8, 2018" ("Supplemental Disclosure")—is wrong.  Dkt. 1199 at 1.  Adobe is relying on PKZIP *alone* as invalidating the asserted claims and thus was not required to identify PKZIP in that disclosure.  The Court will recall TecSec moved to "Exclude Testimony Regarding Dr. Clark's *Obviousness* *Combinations* For Failing to Set Forth Sufficient Basis for the Proposed *Combination* That Would Pass Muster *Under 35 U.S.C. § 103*."  Dkt. 1015 at 22.  During oral

---

[1] Of course, Adobe will fully comply with the Court's Order, and will offer no expert testimony regarding the TISPEM system itself (as opposed to the prior art TISPEM publications).

argument, the Court and both parties conveyed the same understanding—that TecSec wanted to know the specific *§ 103 obviousness combinations* Dr. Clark would testify about at trial. *See, e.g.*, Dkt. 1141 at 28:20-30:19, 34:24-37:1. TecSec argued that Dr. Clark "shouldn't be allowed to show up and just come up with *combinations* at the fly at trial" and took no issue with Dr. Clark's single-reference opinions. *Id*. at 29:15-16. The Court understood TecSec's complaint, asking Adobe: "Why aren't you required to identify by the close of discovery, or certainly by the testimony when your expert is deposed, those *combinations*?" *Id*. at 37:18-20; *id*. at 37:6-9.

The Court denied "TecSec's motion as to the issue of Dr. Clark's testimony on obviousness" without prejudice, but ordered Adobe to "supplement its claim charts and analysis by specifically identifying the prior art Dr. Clark will rely on in his testimony for each of the claims asserted." Dkt. 1152 at 6. Because the parties only disputed whether Dr. Clark sufficiently disclosed how the asserted prior art would be *combined*, Adobe believes the June 8 Order is straightforward and required it to identify only the specific obviousness *combinations* Dr. Clark would rely on at trial.[2] With that understanding, Adobe complied with the June 8 Order by identifying in its Supplemental Disclosure the obviousness *combinations* Dr. Clark would rely on at trial. Dkt. 1158. Consistent with its understanding of the Order, Adobe did not identify PKZIP in that disclosure because Dr. Clark will *not* rely on PKZIP as part of an obviousness combination at trial. Instead, Dr. Clark will testify that PKZIP *alone* invalidates the asserted claims.

Adobe believes there is *no* fair reading of the June 8 Order that it is broader than "Dr. Clark's *Obviousness **Combinations***." Dkt. 1015 at 22. Adobe complied with the June 8 Order, has voluntarily dropped the lion's share of its defenses, and gave notice to TecSec far beyond that

---

[2] Indeed, merely identifying a narrowed list of references would not address TecSec's core complaint—that "Dr. Clark forms improper obviousness *combinations* based on several different *combinations* of no fewer than seven independent references." Dkt. 1015 at 22.

required by the Court's orders, well in advance of trial. TecSec can suffer no prejudice because (i) TecSec has had notice of Adobe's PKZIP contentions for over a year, (ii) both parties' experts have analyzed and disclosed their opinions on PKZIP, and (iii) TecSec deposed Adobe's expert Dr. Clark on PKZIP (and (iv) has had the opportunity to re-depose him at Adobe's expense). The Court should reject TecSec's attempt to evade this prior art on procedural grounds and allow Adobe's invalidity case to be tried on the merits.

### A.    The TISPEM Publications and PKZIP Were Not Excluded or Withdrawn

**The TISPEM publications.** TecSec contends the Court excluded the prior art TISPEM publications. Not so. The Court excluded only Dr. Clark's testimony about the TISPEM *system*:

> What is concerning is that Dr. Clark does not have any corroborating evidence to support his *ipse dixit* testimony that an alleged earlier iteration of the TISPEM *system* predates the patents-in-suit and constitutes prior art. TecSec sought a copy of the earlier iteration in discovery and it was not produced. Such testimony must therefore be excluded.

Dkt. 1152 at 5. The Order does not reference *prior art* TISPEM *printed publications*. For good reason. TecSec did not seek to exclude those publications, which are (separate and apart from the TISPEM system) invalidating prior art. "Printed publications" prior art are distinct from "system" prior art; Dr. Clark's opinions on what the TISPEM publications disclose to persons of skill in the art raise none of the concerns the TISPEM system raised. TecSec's attempt to exclude *prior art* TISPEM *publications* based on an Order addressing the *non-prior art* TISPEM *system* is an unfair effort to obtain summary judgment of validity and prevent trial on the merits. It should be rejected.

**PKZIP.** TecSec's contention that Adobe voluntarily dropped its best single invalidity reference by omitting it from its Supplemental Disclosure, is not credible. As noted above, TecSec is wrong and misstates the June 8 Order.

First, TecSec moved to exclude Dr. Clark's testimony about "obviousness *combinations*." Dkt. 1015 at 22. TecSec did not move to exclude single-reference invalidity opinions—either

anticipation or single-reference obviousness. That is why TecSec's motion is titled "Motion to Exclude Testimony Regarding Dr. Clark's Obviousness *Combinations* For Failing to Set Forth Sufficient Basis for the Proposed *Combination* That Would Pass Muster Under 35 U.S.C. § 103." *Id.* TecSec argued Dr. Clark "forms improper obviousness *combinations* based on several different *combinations* . . . without establishing the relevance of the references or why one of ordinary skill in the art would have *combined them* in the suggested manner." *Id.*

Second, during oral argument, TecSec only raised alleged deficiencies in Dr. Clark's obviousness *combinations*—nothing more. In open court, TecSec's counsel stated:

> The final concern with Dr. Clark is his obviousness analysis is just woefully inadequate. He doesn't want to disclose what his actual opinions are. He has got lots of charts. But when you ask him, what are his *combinations*, and you look at his charts, he'll say, well, I'm going to take one reference and *combine* it with one of this list of 10 or 20 references.
>
> And we asked him at his deposition, which *combination* are you actually relying on? He said, I haven't decided yet. But it's just up to us to guess how he is going to *combine* those references. . . . He doesn't say on a reference-by-reference basis what's the motivation to *combine* those references.
>
> . . . I am just going to show up at trial. I am finally going to pick my *combinations*. And then I am going to come up with how these *combinations* work, and then I am going to tell you what the motivation to *combine* those two particular references is.
>
> It is not permissible. . . . He shouldn't be allowed to show up and just come up with *combinations* at the fly at trial.

Dkt. 1141 at 28:20-29:16. TecSec's counsel did not seek to exclude, and failed to even mention, Dr. Clark's single-reference invalidity opinions. And, unsurprisingly, the Court understood TecSec's concern about Dr. Clark's obviousness combinations, asking Adobe: "Where is it in his deposition testimony where he says, *combine* A with B or A with B, C, and D?" *Id.* at 36:11-12; *see also id.* at 37:18-20, 37:6-9.

Because TecSec's motion was directed only at Dr. Clark's obviousness combinations, and because only identifying a narrowed list of prior art references would not resolve that motion,

Adobe understood the June 8 Order to require it to identify the obviousness combinations Dr. Clark would present at trial. With this understanding, Adobe filed its Supplemental Disclosure, narrowing the obviousness combinations Dr. Clark would present at trial. Dkt. 1158 at 1-4. To preempt any waiver argument, Adobe also identified 35 U.S.C. § 102 as an additional ground of invalidity. *Id.* But Adobe did ***not*** drop any anticipation or single-reference obviousness defenses—which TecSec never moved to exclude—by omitting them from that disclosure.

Importantly, TecSec does not contend it detrimentally relied on the omission of PKZIP from the Supplemental Disclosure, or that it would be harmed if Adobe presented PKZIP at trial. Nor could it. Adobe promptly made Dr. Clark available for deposition at its own expense. Ex. 1 (6/19/18 Kohm email) at 3. TecSec responded: "We need to take a look at any supplement from Clark before we decide on a deposition date." *Id.* at 1-2. Adobe served that supplement three days later. Dkt. 1158. TecSec did not respond. Adobe's new trial counsel followed up ten days after appearing in the case, asking TecSec to propose a date or confirm it was foregoing the deposition. Ex. 2 (8/31/18 Chang email) at 1; Dkt. 1172. TecSec did not respond. Adobe offered Dr. Clark, for a ***third*** time, on September 6. Dkt. 1200-3. Again, TecSec failed to respond. Instead, TecSec waited until the eve of the pretrial disclosures to object.

TecSec's conduct is indicative of a party seeking to manufacture prejudice where none exists, hoping to exclude invalidating prior art rather than conduct trial on the merits. Justice prefers trial on the merits.

**B.      TecSec Has Been on Notice of Dr. Clark's Opinion that PKZIP Anticipates and Renders Obvious the Asserted Claims Since January 2018**

TecSec argues Dr. Clark neither "contended that PKZIP anticipates any of the asserted claims" nor "explained how PKZIP could be combined with TISPEM, or any other prior art, to render obvious the asserted claims." Dkt. 1199 at 4. TecSec's argument is factually incorrect.

Adobe first disclosed its contention that "[t]he asserted claims … are anticipated and/or rendered obvious by PKZIP" in its July 24, 2017 invalidity contentions. Ex. 3, Ex. O at 1. Adobe reiterated its contention in its October 13, 2017 amended contentions. Dkt. 921-23 at 2. Consistent with these disclosures, Dr. Clark opined in his January 30, 2018 report that PKZIP anticipates and renders obvious all asserted claims; he also provided a chart with a claim-by-claim, and limitation-by-limitation analysis demonstrating how PKZIP anticipates and renders obvious all asserted claims. Ex. 5 (Clark Op. Rpt.) at 94 (explaining that "PKZIP is a compression and encryption program" that "allows for encryption of files through the use of a password," and "allows for a mixture of encrypted and non-encrypted files to be nested inside a zipped file"); *id.* at Ex. C-18.

TecSec's technical expert, Dr. Jones, directly responded to Dr. Clark's PKZIP opinions in TecSec's February 20, 2018 rebuttal expert report on validity:



In his reply report, Dr. Clark directly responded to Dr. Jones' opinions and reiterated his intent to testify at trial that PKZIP anticipates and renders obvious the asserted claims:

➤ "One of the Grid computers booted a Windows 3 environment and was equipped with several utilities including MS Word and PKZip. The PKZip version supported the -s (scramble) option that allows a user to use a password to encrypt the zip archive. I intend to demonstrate PKZip at trial." Ex. 7 (3/6/18 Clark Reply Rpt.) at 5; *see also id.* at 13-14.

➤ "Additionally, as I may demonstrate at trial, PKZIP enables a user to encrypt and archive (i.e., a PKZIP file) and place the encrypted archive in a container archive that can also be encrypted." *Id.* at 128.

Consequently, TecSec has had almost ***11 months*** to prepare for Dr. Clark's trial testimony on PKZIP. TecSec also had the opportunity to explore Dr. Clark's opinions and the scope of his anticipated trial testimony during his March 15, 2018 deposition.[3] TecSec's argument that it lacked notice of Dr. Clark's opinions regarding PKZIP is refuted by the record.

### C.    TecSec Has Been on Notice of Dr. Clark's Opinion that the TISPEM Publications Render Obvious the Asserted Claims Since January 2018

TecSec contends Dr. Clark's opinions regarding the TISPEM publications were not timely disclosed. Again, TecSec is wrong.

Dr. Clark disclosed his intent to rely on the TISPEM publications as prior art (distinct from descriptions of the TISPEM system) in his January 30, 2018 opening expert report on invalidity. For example, regarding the "RFC 1113" publication, Dr. Clark explained it qualifies as a prior art printed publication because it was publicly available by at least 1990:

> To my knowledge, the IETF website maintains a complete and reliable collection of standards that have been published by the IETF, including the dates on which those standards were made available to the public, and I regularly rely on the IETF as a source for this purpose. I personally reviewed the published RFC 1113 as early as 1990 as part of my employment with TIS. RFC 1113 is available for on IETF's website today.

Ex. 5 (Clark Op. Rpt.) at 46 (citation omitted); *see also id.* at 45. Similarly, Dr. Clark explained that the "Galvin" publication was publicly available by at least September 1992:

---

[3] TecSec examined Dr. Clark on the (a) authenticity of a computer on which PKZIP was installed and (b) if software on the computer is prior art. *E.g.*, Ex. 8 (Clark Dep.) at 59:16-61:1, 70:2-71:19.

> I understand that Ms. Jane-Ellen Long, a former employee of USENIX association, has provided a declaration stating that it was the USENIX Association's ordinary business policy and procedure to disseminate to all attendees, without confidentiality restrictions, all refereed papers presented at every USENIX conference or symposium on the first day of that conference or symposium, and that would include the September 14-16, 1992 USENIX Symposium Proceedings, UNIX Security Symposium III Proceeding, in Baltimore, MD, which included the paper by Galvin & Balenson, Security Aspects of a UNIX PEM Implementation.

*Id.* at 46. Dr. Clark provided a claim chart, mapping the relevant disclosures of the TISPEM publications to the asserted claims on a limitation-by-limitation basis. *Id.* at C-17.

Again, TecSec's expert Dr. Jones directly responded to Dr. Clark's opinions regarding the TISPEM publications. For example, ███████████████████████████████████

███████████████████████████████████████████████ ████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████ Consequently, and contrary to TecSec's assertions, TecSec has been on notice of the TISPEM prior art publications since at least January 30, 2018.

***

TecSec's motion is an improper attempt to evade trial on the merits. Its effort to use Adobe's good-faith streamlining to effectively seek summary judgment of validity is improper. Regardless, TecSec has identified no prejudice—none exists. TecSec's motion should be denied.

## II.    RESPONSE TO MIL #2: TO PRECLUDE ANY COMPUTERS, SOFTWARE OR OTHER MATERIALS THAT WERE NOT PRODUCED IN AN ACCESSIBLE FORM PRIOR TO THE CLOSE OF FACT DISCOVERY

TecSec contends Adobe should be precluded from presenting 66 (14 physical and 52 documentary) "unproduced" exhibits at trial. TecSec is overreaching. The broad relief TecSec seeks is inappropriate for several reasons, including because *no* surprise, harm, or prejudice exists, and permitting Adobe to present these exhibits will not disrupt the trial.

9

### A.    Physical Exhibits

TecSec asks the Court to exclude *all* physical exhibits (DPX-1 to DPX-14) identified on

Adobe's trial exhibit list.  Dkt. 1199 at 7-8.  The Court should decline.

#### 1.    PKZIP on a Computer

TecSec contends that Adobe intends to introduce at trial "unspecified data it claims to have

recently extracted, or hopes to extract, from the Grid computers."  *Id.* at 7.  That is not correct.  As

discussed above, Adobe only intends to present a timely disclosed and fully inspected PKZIP

system at trial to demonstrate to the jury how PKZIP invalidates the asserted claims.

Adobe produced documentation regarding PKZIP, including the PKZIP user manual, when

it served its July 24, 2017 invalidity contentions.  *See* Ex. 9 (7/24/17 Howland Email).  As one of

the most widely used software applications of its time, PKZIP was publicly available before the

asserted patents' critical date, and remains publicly available today.[4]  TecSec neither sought a

separate copy of the software, nor objected to Adobe's October 13 amended PKZIP contentions.

And its expert, Dr. Jones, never claimed he was unable to analyze PKZIP or its functionality in his

rebuttal report on validity.  Instead, he described PKZIP's functionality at length.  *Infra* at 7.

Over thirteen months ago, on September 25, 2017, Adobe timely notified TecSec it secured

two Grid computers (earlier that same day), and made them available for inspection the next day.[5]

Ex. 10 (9/25/17 Zhang email) at 1.  TecSec's source code expert, Richard Smith, inspected the

Grid computers on October 18, 2017, and booted the Grid computer with PKZIP (DPX-1) into its

MS-DOS operating system.  Dkt. 1209-36 at 1.  PKZIP was fully operational and accessible to

Mr. Smith during his inspection.  Ex. 7 (Clark Reply Rpt.) at 5 (describing using PKZIP on DPX-

---

[4] For example, a basic Google search for "PKZIP 2.04g" immediately yields three links from which
a user may download PKZIP: (1) https://archive.org/details/PKWARE_version_2.04c;
(2) https://winworldpc.com/product/pkzip/20; and (3) https://www.hpcalc.org/details/3882.

[5] TecSec moved to exclude one computer—DPX-1.  Adobe will not present the other at trial.

1); Ex. 4 (10/16/17 Wood Email) at 1.  TecSec's attempt to preclude Adobe from demonstrating PKZIP, whether on the Grid computer (DPX-1) or another compatible computer (DPX-2), should be rejected.

### 2.    Other Physical Exhibits

TecSec asks the Court to exclude Adobe's remaining physical exhibits: DPX-3, DPX-4, DPX-5, to DPX-6 and DPX-8 to DPX-14.  TecSec's request should be rejected.

TecSec's request rests on its misleading representations that (1) Adobe "denied" TecSec "the opportunity to inspect its 'physical' exhibits until some unspecified point in the future," and (2) "TecSec has still not been given the opportunity to inspect Adobe's 'physical' exhibits."  *Id.* at 10.  That does not fairly reflect what happened.

On September 11, 2018, Adobe proposed "[p]hysical exhibits do not need to be exchanged on September 28, but a 'placeholder' entry on the exhibit list must be included for each physical exhibit a party may use at trial."  Ex. 11 (9/11/18 Cohen email) at 7.  TecSec asked to see Adobe's physical exhibits before September 28."  *Id.* at 5.  Adobe then (a) "explained that because the parties' objections are not due until ***November 7***, there is no need to have an inspection of physical exhibits this week," and (b) proposed the parties "find ***a mutually agreeable time for any inspection*** after any physical exhibits are disclosed on the parties' exhibit lists."  *Id.* at 3.  Instead of responding, TecSec moved *in limine* to exclude ***all*** of Adobe's physical exhibits, presumably because it was not "shown" them before September 28.  TecSec's motion should be denied.

First, Adobe produced electronic versions of DPX-4, DPX-5, and DPX-8 (either in whole or in part) during discovery, and each was cited in at least one expert report.

- DPX-4 is a physical copy of the 1992 "UNIX Symposium Proceedings."  Adobe produced the relevant portions during discovery, and ***both parties' experts*** cited it in their reports. Ex. 5 (Clark Op. Rpt.) Mat. Con. at 7; Ex. 6 (Jones Rbt. Rpt.), Ex. 2 at 4.

- DPX-5 is a copy of a 1982 book titled "Cryptography and Data Security" that Adobe produced in electronic format during discovery, and ***both parties' experts*** cited in their reports. Ex. 5 (Clark Op. Rpt.) Mat. Con. at 10; Ex. 6 (Jones Rbt. Rpt.), Ex. 2 at 4.

- DPX-8 is a physical book titled "PDF Reference" that Adobe produced in electronic format during discovery and ***both parties' experts*** cited in their reports. Ex. 12 (Nebel Non-Infringement Rpt.) at ¶ 343; Ex. 6 (Jones Rbt. Rpt.), Ex. 2 at 4. In fact, TecSec included DPX-8 ***on its own exhibit list***. Dkt. 1192-2 at 9 (PX-363).

Thus, Adobe timely produced DPX-4, DPX-5, and DPX-8. TecSec's motion as to these exhibits should be denied for this reason alone.

TecSec's argument to exclude DPX-3 ("computer loaded with Acrobat X") fails for similar reasons. Acrobat X is a publicly available accused product. It cannot be disputed that Acrobat X was produced and made available during discovery. Indeed, TecSec's expert inspected Acrobat ***source code*** in August 2017, and TecSec put screenshots of the accused features in Acrobat X on its exhibit list. Ex. 4 (10/16/17 Wood email) at 1; Dkt. 1192-2 at 15 (PX-571). There is nothing surprising or prejudicial about Adobe's presenting an accused version of Acrobat on a computer.

Second, even if the Court finds these exhibits were disclosed late, any alleged untimely disclosure was substantially justified and/or harmless. The Court considers the following factors to determine if nondisclosure is substantially justified or harmless: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence."[6] *S. States Rack And Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003).

---

[6] TecSec does not apply the *Southern States* factors or identify the purported harm or prejudice it will suffer. If TecSec raises makes such argument for the first time in reply, it should be struck. *See, e.g., Baxter v. United States*, No. 1:15-cv-633, 2016 WL 5073725, at *5 (E.D. Va. Sept. 20, 2016) ("Typically, courts will not consider an argument raised for the first time in a reply brief.").

Here, Adobe timely produced several of the subject physical exhibits (*infra* at 11-12), and any failure to timely produce other exhibits is harmless. TecSec did not identify any surprise or prejudice, much less the type of prejudice warranting exclusion. Nor could it, as each exhibit was either timely produced (DPX-4, DPX-5, and DPX-8), made available for inspection (DPX-1, DPX-2, DPX-3, DPX-7[7]), or publicly available (DPX-4 through DPX-14) during discovery. Regardless, allowing Adobe to present these exhibits will not disrupt trial, and any purported prejudice would be cured because TecSec will inspect the physical exhibits on October 30 (over a week before exhibit objections are due) and has "sufficient time to review [them] to prepare for the [] trial date." *Cormack v. N. Broward Hosp. Dist.*, No. 08-cv-61367, 2009 WL 2848998, at *4 (S.D. Fla. Aug. 28, 2009) (finding no prejudice where documents were not formally produced until less than one month before trial); Ex. 11 (10/19/18 Oakes email) at 1. TecSec's motion should be denied.

## B. Documentary Exhibits

### 1. Documents Cited in Expert Reports

TecSec contends 11 documentary exhibits (DX-169, DX-223, DX-224, DX-225, DX-282, DX-283, DX-363, DX-364, DX-367, DX-373, DX-374) should be excluded because they purportedly were "not produced during discovery." Dkt. 1199 at 7. TecSec is wrong.

TecSec's wrongly characterizes these exhibits as "not produced during discovery." *Id.* All of these exhibits were publicly available ***and*** cited in at least one of Adobe's damages expert's two expert reports—served on January 30, 2018 and February 20, 2018. *See* Ex. 13 at 1.

Courts routinely deny motions to exclude "unproduced" documents where, as here, they are cited in an expert report. For example, in *Illinois Tool Works, Inc. v. MOC Prod. Co.*, the court refused to exclude documents not produced during discovery because they were "attached as an

---

[7] Adobe addresses DPX-1, DPX-2, and DPX-7 above. *See infra* at 10-11.

exhibit to [an] expert report" and, thus, defendant "had access to these documents for over a year [and had] . . . ample opportunity to cure any potential prejudice [plaintiff's] errors may have caused." No. 09-cv-1887, 2012 WL 3561984, at *10 (S.D. Cal. Aug. 17, 2012).[8]

The same result follows here. TecSec knew of these 11 exhibits by February 20, 2018, when Dr. Sullivan served his rebuttal expert report. *See* Ex. 13 at 1. Because they were cited in Dr. Sullivan's reports, TecSec's damages expert, Dr. Wagner, had the opportunity to analyze them before issuing his reply report and, unsurprisingly, cited several therein. Ex. 14 (Wagner Op. Rpt.) at n. 11, 12, 107, 239 (citing DX-363 and DX-364). TecSec had plenty of time to review these documents and could have deposed Dr. Sullivan on them. *Cf. Hitkansut*, 127 Fed. Cl. at 109. Its counsel made the tactical decision not to. Regardless, permitting Adobe to rely on these exhibits will not prejudice TecSec or disrupt the December 10 trial date. *See S. States*, 318 F.3d at 597.

TecSec's conduct undermines its motion. For example, TecSec's own exhibit list includes many exhibits cited in expert reports but not formally "produced." *See, e.g.*, Dkt. 1192-2 at PX-463, PX-551, PX-564. And two of the subject exhibits are merely screenshots of ***TecSec's website*** and are on ***TecSec's own exhibit list***. *Cf. id.* at 10 (PX-446), 15 (PX-563) with Dkt. 1193-3 at 20 (DX-363 and DX-364). TecSec cannot have it both ways.

### 2.    Dictionary Definitions of "Recursively"

TecSec contends the Court should exclude three dictionary definitions of "recursively" (DX-10, DX-15, and DX-16), which are probative of how persons of skill in the art understood the term as used in the RFC 1113 prior art publication. The Court should decline.

In *GE Capital Commercial, Inc. v. Worthington National Bank*, the court denied defendant's motion *in limine* to exclude certain trial exhibits that "were not produced" because

---

[8] *See also Easley*, 2015 WL 6179522, at *1; *Hitkansut LLC v. U.S.*, 127 Fed. Cl. 101, 109 (2016).

each was "either publicly available" or cited in plaintiff's summary judgment opposition, and thus "[d]efendant suffers no legal harm at trial if [plaintiff] is allowed to introduce these documents." No. 09-cv-572, 2011 WL 5025153, at *15 (N.D. Tex. Oct. 20, 2011); *Koninklijke Philips Elecs. N.V. v. Cinram Int'l Inc.*, No. 08-cv-515 et al., 2013 WL 12326625, at *2 (S.D.N.Y. June 10, 2013) ("Philips may introduce PTX 1431 as it is a publicly available document whose existence is known to defendants."). The same is true here. As with the exhibits discussed above, DX-10, DX-15, and DX-16 should not be excluded because each is a publicly available dictionary, and TecSec identifies no surprise, prejudice, harm, or potential for disruption from Adobe's allegedly late disclosure. *S. States*, 318 F.3d at 597. Adobe should be permitted to present DX-10, DX-15, and DX-16, which are probative to disputed issues regarding the meaning of the word "recursively."

### 3.    Publicly Available Articles Dated After the Close of Fact Discovery

TecSec seeks to exclude two publicly available articles (DX-92 and DX-93) because they were not produced before discovery closed. TecSec fails to mention, however, that neither article was published or available before discovery closed. TecSec's request should be denied and Adobe permitted to present DX-92 and DX-93 at trial. *See* Dkt. 1157 at 8 n.2.

DX-92 is a third-party article titled "Technology Launched that Changed Legal Practice" published on ***June 22, 2018***. Dkt. 1193-3 at 6. DX-93 is an Adobe article titled "Evolution of the Digital Document, Celebrating Adobe Acrobat's 25th Anniversary" published on ***June 14, 2018***. *Id.* Both articles were published in June 2018, after the close of both fact and expert discovery on September 22, 2017 and March 20, 2018, respectively. Dkts. 877, 878, 962 at 2. Thus, Adobe's "late" production of these documents does ***not*** violate any Court order and, if it does, it is substantially justified and harmless. *See Firehouse Restaurant Grp., Inc. v. Scurmont LLC*, No. 09-cv-618, 2011 WL 3555704, at *3 (D. S.C. Aug. 11, 2011) (finding late production of documents "not even in existence prior to the close of discovery" to be substantially justified). TecSec also

included "unproduced" documents dated after either fact or discovery closed.  *See, e.g.*, Dkt. 1192-2 at 16 (PX-580, dated 5/1/18); *see also* Adobe MIL #11.  Again, TecSec cannot have it both ways.

### 4.    Publicly Available Articles

TecSec contends the Court should exclude 27 publicly available articles on Adobe's exhibit list, which fall into three general categories.  TecSec's request fails across the board.

First, TecSec seeks to exclude two exhibits (DX-8, DX-9) containing screenshots of the accused features in Acrobat X.  As noted above, Acrobat X is an accused product made available during discovery.  *See infra* at 12.  Permitting Adobe to present these screenshots at trial cannot prejudice TecSec; TecSec put similar screenshots on its exhibit list.  Dkt. 1192-2 at 15 (PX-571).

Second, TecSec seeks to exclude 12 documents publicly available on Adobe's website.[9] Many of these exhibits Adobe press releases or FAQs showing Adobe does not market, and its customers have no interest in, the accused features.  *See, e.g.*, Dkt. 1193-3 at 12 (DX-227).  Others are Adobe "help" articles about Acrobat's "security" features, which have been the subject of this litigation since its inception.  *Id.* at 12 (DX-234).  Since all of these articles were publicly available on Adobe's website, TecSec would not be prejudiced if Adobe were permitted to present them at trial.  *Infra* at 14-15.  Indeed, TecSec's own exhibit list includes three of the subject exhibits it seeks to exclude (*cf.* Dkt. 1192-2 and Dkt. 1193-3, DX-227 with PX-456, DX-229 with PX-458, and DX-243 with PX-355), and other unproduced yet publicly available screenshots from Adobe's website.  *See, e.g.*, Dkt. 1192-2 at 13-14 (PX-518, PX-519, PX-520, PX-565, PX-566, PX-569).

Third, TecSec seeks to exclude 16 exhibits from third-party websites.[10]  But, as described

---

[9] These 12 exhibits are DX-227, DX-228, DX-229, DX-232, DX-234, DX-235, DX-241, DX-242, DX-243, DX-245, DX-246, DX-247.  Adobe will make any trial exhibit available upon request.

[10] These 16 exhibits are DX-11, DX-13, DX-94, DX-122, DX-123, DX-124, DX-230, DX-231, DX-233, DX-236, DX-237, DX-238, DX-239, DX-240, DX-408, and DX-409.

above, these exhibits are publicly available and probative to disputed issues in this case.[11]  TecSec identifies no prejudice, harm, or potential disruption to trial.  TecSec's motion should be denied.

### 5.    Damages Summary Exhibits

TecSec invites the Court to exclude six "unproduced" damages summary exhibits: DX-529 to DX-534.  The Court should decline.  These exhibits properly summarize highly probative and timely produced information, and are admissible under at least FRE 611(a) and/or FRE 1006.

First, "[i]t is well-established that a district court may admit summary testimony and summary charts, under Rule 611(a) of the Federal Rules of Evidence, if they will help the jury to better understand the evidence presented and to ascertain the truth."  *United States v. Rand*, No. 10-cv-182, 2011 WL 5037189, at *1 (W.D.N.C. Oct. 24, 2011) (citation omitted).  In making this determination, the Court considers "the length of the trial, the complexity of the case, [] the accompanying confusion that a large number of witnesses and exhibits may generate for the jury," and "[t]he possible prejudice to the defendant by allowing the summary chart into evidence."  *Id.*; *see also id.* at *3 (noting that "secondary-evidence summaries" may be admissible, and that "[t]he Fourth Circuit . . . often allows the admission of summaries of already admitted evidence); *United States v. Porter*, 821 F.2d 968, 974-75 (4th Cir. 1987) ("Summary charts may be admitted if they are based upon and fairly represent competent evidence already before the jury.").

Second, FRE 1006 allows use of "a summary, chart, or calculation to prove the content of voluminous writings . . . that cannot be conveniently examined in court," so long as "the originals or duplicates [are] available for examination or copying, or both, by other parties at a reasonable

---

[11] For example, DX-408 shows unsuccessful searches of "Adobe" and (former Adobe employee Mark) "Bartel" in W3C's mailing-list for the "xml-encryption" working group, which rebuts TecSec's argument that its disclosure of the asserted patents to this working group put Adobe on notice of the asserted patents.  *See* Ex. 21 (DX-408) at 1-2.  Four exhibits from third-party websites show licensed products were not marked.  *See* Dkt. 1193-3 at DX-11, DX-122, DX-123, DX-124.

time and place." *United States v. Blackwell*, 436 F. App'x 192, 199 (4th Cir. 2011).

TecSec does not contend these exhibits are inadmissible under FRE 611(a) or 1006. Nor could it. Each exhibit summarizes voluminous amounts of admissible evidence regarding the alleged damages in this case, and will help the jury understand the evidence and ascertain the truth in this complex patent trial. Adobe timely produced the underlying information—which is consistent with the evidence that will be presented at trial—and TecSec can cross-examine Dr. Sullivan or request a limiting instruction at trial. *See Rand*, 2011 WL 5037189, at *1; *Diehl v. Blaw-Knox*, No. 01-cv-770, 2004 WL 5509085, at *1 (M.D. Penn. Sept. 14, 2004) ("Prejudice, if any, can easily be cured by cross-examining [the expert].").

Because these exhibits are admissible under FRE 611(a) and/or 1006, TecSec's contention that they should be excluded as "unproduced" falls flat. In *United States v. Foley*, the Fourth Circuit rejected the argument that the trial court erred by allowing charts "not made available until the weekend before trial" because "[t]he data upon which these charts were based came from defendants' own listing service" and "the documents were made available to defendants . . . well before trial." 598 F.2d 1323, 1337-38 (4th Cir. 1979). Adobe did the same here. It produced the underlying evidence during discovery and provided the summaries to TecSec on September 28, 2018—over two months before trial. *See* Dkt. No. 1193. TecSec has not identified any prejudice or harm from Adobe's allegedly late disclosure of these summary exhibits. Instead, they will assist the jury in evaluating the evidence.[12] Adobe should be permitted to present these exhibits at trial.

***

TecSec's blanket request to exclude the subject Adobe exhibits is overbroad, inconsistent

---

[12] In addition, these exhibits are independently admissible because they "so accurately and reliably summarize complex or difficult evidence . . . as to materially assist the jurors in better understanding the evidence." *United States v. Bray*, 139 F.3d 1104, 111-12 (6th Cir. 1998).

with its own exhibit list, and seeks to remove probative evidence that will assist the fact finder.

TecSec identifies no prejudice; there is none. The Court should deny TecSec's motion.[13]

## III.     RESPONSE TO MIL #3:  TO PRECLUDE NON-INFRINGEMENT-RELATED OPINION TESTIMONY BY LANDWEHR, ROSENTHOL OR YDENS

On October 11, *TecSec* counter proposed a stipulation that would render this motion moot:

4. ~~Expert~~ Opinions from John Landwehr, Leonard Rosenthol or Phil Ydens: Adobe will not elicit any ~~expert opinions under Federal Rule of Evidence 703~~ opinion testimony from John Landwehr, Leonard Rosenthol or Phil Ydens on the ultimate issues of noninfringement or non-infringing alternatives.  This agreement does not preclude Adobe from eliciting factual testimony from Messrs. Landwehr, Rosenthol, or Ydens regarding, for example, the features, functionality, or use of Acrobat, including but not limited to any changes that have been or could be made to Acrobat's features and functionality.

*See* Ex. 22 (10/11/18 Oakes email).[14]  After reviewing TecSec's motion, Adobe *agreed* to TecSec's

proposed stipulation. Ex. 23 (10/19/18 Cohen email).  But TecSec now *refuses* to agree to *its own*

proposed stipulation, solely because it has "brief[ed] the issue."[15]  Ex. 17 (10/24/18 Oakes email).

That is unreasonable and wastes judicial resources.  The Court should hold TecSec to its proposal

(and the law) by entering an order memorializing the stipulation *TecSec proposed* on October 11.

---

[13] Alternatively, the Court should defer ruling on the admissibility of the subject exhibits until trial. *See Centripetal Networks, Inc. v. Keysight Tech., Inc. & Ixia*, No. 17-cv-383, Dkt. 524 at 12 (E.D. Va. Sept. 25, 2018) (deferring ruling on motion *in limine* to exclude unproduced exhibits); *see also Easley v. Haywood*, No. 08-cv-601, 2015 WL 6179522, at *1 (S.D. Ohio Oct. 21, 2015).  If the Court is inclined to grant TecSec's motion, the Court should apply the same standard and exclude any exhibit on TecSec's exhibit list that was not formally produced during discovery.

[14] TecSec's proposal correctly recognizes Adobe can elicit fact testimony from Messrs. Landwehr, Rosenthol, and Ydens based on their personal knowledge (which they undisputedly have) about Acrobat's features and functionality.  *See, e.g., In re Google AdWords Litig.*, No. 08-cv-3369, 2012 WL 28068, at *5 (N.D. Cal. Jan. 5, 2012) (permitting lay testimony on what "system does, how it behaves, and what it does when certain variables are changed"), *rev'd on other grounds*, 802 F.3d 979 (9th Cir. 2015); *CertusView Techs., LLC v. S&N Locating Servs., LLC*, No. 13-cv-346, 2016 WL 6915303, at *1 (E.D. Va. Mar. 7, 2016) (same); *Open Text S.A. v. Box, Inc.*, No. 13-cv-04910, 2015 WL 393858, at *7 (N.D. Cal. Jan. 29, 2015) (same).

[15] Adobe followed up on October 25, asking TecSec to provide the legal basis for refusing to agree to its own proposed stipulation.  Ex. 17 (10/24/18 Cohen email) at 1-2.  TecSec never responded.

## IV.    RESPONSE TO MIL NOS. 4 AND 5:  TO PRECLUDE TESTIMONY BY RUSS MUNDY, DAVID BALENSON, OR WILLIAM BARKER

TecSec contends Russ Mundy, David Balenson, and William Barker should be barred from testifying at trial because they "were never disclosed as having knowledge about any issue that is appropriate for the jury's consideration." Dkt. 1199 at 13-14.  TecSec is wrong; all three witnesses were fairly disclosed, but TecSec chose not to depose them.

Messrs. Balenson and Barker were disclosed on August 17, 2017 as having knowledge about "prior art systems and methods that were publicly available and which render the patents-in-suit invalid."  Ex. 15 (Adobe's 2nd Updated Initial Disclosures) at 3.  Mr. Mundy was disclosed on the same topic on September 20, 2017.  Dkt. 1200-10 at 8.

TecSec's motion first presumes that these witnesses' testimony can relate only to PKZIP or TISPEM, which TecSec contends "should be excluded from trial pursuant to the Court's prior orders." Dkt. 1199 at 14.  But, as described above, the Court's prior orders do not preclude Adobe from presenting either PKZIP or the TISPEM publications at trial. *Infra* at 1-9.  If the Court agrees, TecSec has no basis to preclude these witnesses' testimony. *See, e.g.*, *DNT, LLC v. Sprint Spectrum, LP*, 09-cv-21, 2010 WL 582164, at *4 (E.D. Va. Feb. 12, 2010) ("If the Worldport prior art stays in the case, [the witnesses'] testimony is relevant and  admissible.  DNT had ample opportunity to depose the witness and he has produced several hundred documents relevant to the subject matter of his testimony.").  Moreover, the Court's Order on TecSec's *Daubert* motions only precludes certain *expert* testimony.  Dkt. 1152 at 5-6.  It does not impact Adobe's ability to present fact testimony from witnesses such as Messrs. Mundy, Balenson and Barker; this *factual* evidence is relevant to disputed issues such as the state of the art and obviousness. *Infra* at n.14.

Second, TecSec contends Mr. Mundy should not testify at trial because "he was not timely disclosed as a trial witness" (Dkt. 1199 at 13-14), despite his timely identification as a potential

witness.  But, as explained in Adobe's Motion for Leave to File an Amended Witness List (Dkt. 1203), Adobe's inadvertent omission of Mr. Mundy from its witness list does not warrant exclusion because it was harmless, will not disrupt trial, did not surprise TecSec (Mr. Mundy was timely identified more than a year ago), and did not prejudice TecSec (who has until November 7 to object, Dkts. 1185 at 2, 1187).  *See Jain v. Abbott Labs, Inc.*, No. 13-cv-551, 2014 WL 7330805, at *2 (4th Cir. 2014) (denying motion to exclude untimely disclosed expert witness because the moving party was not surprised or prejudiced, and had an opportunity to depose the witness).[16]

Neither the factual record nor fundamental notions of fairness support TecSec's request for the extreme sanction of exclusion.  TecSec chose not to depose these three witnesses, who were properly disclosed on the subjects they will testify on at trial.  TecSec's motion should be denied.

## V.    RESPONSE TO MIL #6:  TO PRECLUDE TESTIMONY BY DOUG BROTZ

TecSec contends Adobe employee Dr. Doug Brotz should be barred from testifying at trial because he allegedly was not disclosed "as a witness who may have personal knowledge about the issues involved in this case."  Dkt. 1199 at 15.  TecSec is wrong.  Adobe timely identified Mr. Brotz in its Rule 26 disclosures on the very same topics he may testify about at trial.[17]

Dr. Brotz joined Adobe 1983 as its first software designer and implementer.  Dkt. 1200-11 at 1.  Over the course of his 35 years at Adobe, Dr. Brotz has held various technical positions and earned the honor of being named an Adobe Fellow.  He now serves in part as a technical advisor on IP matters.  *Id.*  In this latter role, Dr. Brotz is responsible for, in part, assessing the merits of

---

[16] Adobe did more than just "orally advise" (Dkt. 1196 at 13) TecSec of its inadvertent omission of Mr. Mundy; it informed TecSec in writing.  *See* Ex.  (10/12/18 Email from Oakes).

[17] This is another case of the pot calling the kettle black.  TecSec wants to call its CFO John Petty at trial, but failed to identify him in Rule 26 disclosures or otherwise prior to filing its witness list. *See* Adobe's Motion *In Limine* No. 8; Dkt. 1192-1 at 2.

patent infringement claims asserted against Adobe.[18]  After Adobe first learned of TecSec's infringement claims—when the Complaint was filed—Dr. Brotz did exactly that.  As he will testify at trial, Dr. Brotz investigated the merits of TecSec's claims; he found no evidence that any Adobe employee knew of the asserted patents before TecSec filed this lawsuit on February 5, 2010, and that Adobe had a good-faith belief of non-infringement.

Based on the personal knowledge he obtained during his investigation, Adobe disclosed Dr. Brotz on August 30, 2017 as having knowledge about Adobe's "lack of notice of the patents-in-suit."  Ex. 16 (Adobe's 3rd Updated Initial Disclosures) at 4.  TecSec deposed four other Adobe employees after Adobe's August 30, 2017 disclosure, but chose not to depose Dr. Brotz.  *Cf. Diehl*, 2004 WL 5509085, at *1 ("[D]efendant is not at fault if plaintiff's failed to depose [the witness].").

Having not deposed Dr. Brotz, TecSec now seeks to preclude him from testifying at trial because he was allegedly not disclosed "as a witness who may have personal knowledge about the *issues involved in this case*." Dkt. 1199 at 15.  TecSec's contention is refuted by the record which, as described above, shows that Adobe identified Dr. Brotz on August 30, 2017 regarding Adobe's "[l]ack of notice of the patents-in-suit."  TecSec's allegations of induced and willful infringement put the question of pre-suit notice at issue.  Indeed, pre-suit notice forms the basis for about 60% of TecSec's damages claim.  Dkt. 1210 at 15.  Putting aside TecSec's infirm objection, based on an erroneous claim of non-disclosure, TecSec's also contends Dr. Brotz's potential testimony lacks foundation. Dkt. 1199 at 15 (arguing Brotz "cannot possibly testify, based on personal knowledge, that no other Adobe employee was given notice of the patents").  This argument is wrong.

As an initial matter, whether Adobe can lay a foundation for Dr. Brotz's testimony is an issue best decided by the Court at trial, not now.  *Infra* at n.13.  Given its decision not to depose

---

[18] TecSec's *ad hominem* attack on Dr. Brotz as a "professional trial witness for Adobe" is false.

him, it is not surprising that TecSec may not know the foundation for his testimony, but that is no basis to prospectively preclude it.  *If* the issue of pre-suit notice is not resolved on JMOL after TecSec's case-in-chief, Dr. Brotz will be prepared to testify regarding his own lack of knowledge of the asserted patents, and the results of a post-suit investigation he conducted regarding Adobe's alleged pre-suit "knowledge" of the asserted patents, which was within the scope of his job responsibilities.  After that, TecSec can cross-examine him regarding the scope of his investigation and the information he did, or did not, investigate.  Adobe should be allowed to present Dr. Brotz's testimony, which is probative to a disputed fact TecSec has put at issue.

## VI.    RESPONSE TO MIL #7:  TO PRECLUDE TECSEC'S CLAIMS AGAINST OTHER PARTIES IN THE PRESENT LAWSUIT

TecSec contends Adobe should be barred "from making *any* reference to, or introducing *any* evidence relating to, TecSec's claims against other defendants."  Dkt. 1199 at 16.  Although that result is sometimes merited in certain cases, there are important reasons to deny it here.

At the heart of TecSec's allegations is that Adobe intended to infringe the asserted patents from March 3, 2011 to October 18, 2013.  Given Adobe's status as a large corporate defendant, it is likely that TecSec will argue (or the jury will assume) that Adobe is responsible (in whole or in part) for the almost nine-year delay between the filing of the Complaint and trial.  As the Court knows from the record, that argument or inference would be both false and unfairly prejudicial.

First, as explained in Adobe's Motion *in Limine* No. 1, Adobe intends to present evidence[19] to rebut TecSec's argument that Adobe *intended* to infringe the asserted patents from March 3, 2011 (the date of Judge Brinkema's Memorandum Opinion) to October 18, 2013 (the date that the asserted patents expired).  Dkt. 1210 at 1-4.  If TecSec drops its arguments for induced and willful infringement for this time period, Adobe need not present this evidence at trial.  But if TecSec

---

[19] *See* Adobe's MIL # 1 (addressing admissibility of DX-28 to DX-30 and associated testimony).

insists on arguing that Adobe intended to infringe during this time period, Adobe must be permitted to rebut that argument with DX-28, DX-29, DX-30 and testimony establishing that its good-faith belief of non-infringement during this time period was (at a minimum) reasonable.

Second, Adobe intends to affirmatively explain to the jury that Adobe is ***not*** responsible for the almost nine-year delay between TecSec's filing of the complaint and the December 2018 trial date. This fact should be undisputed because, as TecSec's motion acknowledges, Judge Brinkema ordered TecSec's claims to be litigated on a defendant-by-defendant basis and issued a stay to implement that order. *See* Dkt. 1199 at 16. Although during a meet and confer the parties agreed that (1) this delay is not attributable to Adobe, and (2) it would be improper to suggest at trial that Adobe is responsible for it, TecSec now ***refuses*** to agree to a stipulation explaining that Adobe is not responsible. *See* Exs. 17, 23. Given TecSec's refusal, Adobe is permitted to present DX-21 to DX-39 to show it is not responsible for any delay. *See* Dkt. 1193-3 at 2-3.

To rebut the argument or inference that it is responsible for delay, Adobe need not present evidence regarding any defendant other than IBM, and only to show that the Court determined TecSec's case against IBM would proceed first and the case against Adobe (and others) would be stayed, until the litigation against Adobe restarted on September 5, 2014. Dkt. 689 at 2. Without the ability to refute the argument or inference that Adobe is responsible for almost nine years of litigation, Adobe will be unfairly prejudiced. For example, the jury is likely to fault Adobe for the delay, and may issue a damages award intended to punish Adobe for such delay.

TecSec's arguments for exclusion—which lack citation to any legal authority—miss the mark. First, TecSec argues that its "claims against the other defendants involve ***different infringing products***," and thus are irrelevant "to TecSec's claims against Adobe and Adobe's products." Dkt. 1199 at 16. But Adobe does not intend to introduce evidence regarding other

Defendants' accused products, only that the Court's decision that TecSec's litigation against IBM would proceed and Adobe's would be stayed caused the delay. *Infra* at 23-24. Second, TecSec argues that "reference to TecSec's claims against the other defendants would . . . prejudice TecSec by placing it in the position of having to rebut or address matters that are not scheduled for trial." Dkt. 1199 at 16. But Adobe does not intend to present evidence regarding the merits of TecSec's infringement claims against other Defendants, so there is nothing for TecSec to "rebut." *Id.* Instead, Adobe will present this evidence only to (a) rebut TecSec's arguments that Adobe intended to infringe between March 3, 2011 and October 18, 2013, and/or (b) explain that Adobe was not responsible for the almost nine-year delay between filing and trial.

Adobe submits the right solution is that TecSec stipulate Adobe (a) lacked intent to infringe from March 3, 2011 to October 18, 2013, and (b) is not responsible for the almost nine-year delay between filing and trial. If not, Adobe is allowed to rebut those arguments with DX-21 to DX-39.

## VII.    RESPONSE TO MIL #8:  TO PRECLUDE THE PRETRIAL WITHDRAWAL OR DISMISSAL OF PATENT INFRINGEMENT CLAIMS NOT BEING ASSERTED AT TRIAL OR PRODUCTS NO LONGER ACCUSED OF INFRINGEMENT

TecSec contends Adobe should be barred from rebutting TecSec's willfulness claims by presenting evidence it defeated allegations against other patents and products. TecSec is wrong.

"Whether an act is 'willful' is by definition a question of the actor's intent, the answer to which must be inferred ***from all the circumstances***." *WCM Indus, Inc. v. IPS Corp.*, 721 Fed. Appx. 959, 970 (Fed. Cir. 2018) (emphasis original). Accordingly, courts have held that dropped claims or products are among "all the circumstances" that the jury should hear in deciding whether a defendant's infringement was willful. In *Uniloc USA, Inc. v. Microsoft Corp.*, the court held that Microsoft's infringement was not willful in part based on the parties' litigation history, which the court found "is hardly the stuff of which objectively reckless unreasonable conduct is made":

> Of course, relevant to *Seagate's* first prong is **the entire course of this litigation**, which at first Uniloc hoped to dodge. Microsoft's arguments have had substantial support, required intensive factual review and resulted in almost all claims being either dismissed or dropped (as aptly summarized by Microsoft):  'A case that at one point included claims of direct and indirect infringement of fourteen claims based on eight distinct theories resulted in an unappealed judgment of non-infringement of twelve claims, one claim dropped on the eve of trial, all indirect infringement claims dropped on the eve of closing arguments, and only an allegation of direct infringement of a single claim under a single theory remaining.'

640 F. Supp. 2d 150, 176-77 (D.R.I. 2009), *aff'd in part, rev'd in part*, 632 F.3d 1292 (Fed. Cir. 2011) (agreeing with the district court that "the facts here presented are 'hardly the stuff of which objectively reckless unreasonable conduct is made'"). Similarly, in *Carnegie Mellon University v. Marvell Technology Group, Ltd.*, the court denied Carnegie Mellon University's motion *in limine* to exclude evidence of dropped or changed claims, "agree[ing] with Marvell that evidence of dropped or changed claims or products shows the reasonableness of its infringement 'defenses.'" No. 09-cv-290, 2012 WL 5463669, at *2 (W.D. Pa. Nov. 7, 2012).

Here, the circumstances relevant to deciding Adobe's alleged willful infringement must include **all originally asserted** patents, claims, and accused products. The Court will recall that TecSec sued Adobe alleging that multiple versions of four distinct products infringed 72 claims across five patents. Dkt. 1 at ¶¶ 46, 69, 92, 115, 136, 196-97. The breadth of those unfocused allegations is relevant to Adobe's good-faith belief that it did not infringe **any** of the five asserted patents, and the fact that TecSec's overbroad (and non-meritorious) infringement allegations required more investigation, time, and distraction than otherwise would be required. *See, e.g.*, Dkt. 65 (Answer) at ¶¶ 198, 200, 218. TecSec now proceeds to trial alleging one product (Acrobat) infringes 10 claims across four patents, and thus Adobe's good-faith belief has been confirmed for multiple versions of three accused products, 62 claims, and one patent. For the jury to fairly evaluate whether Adobe's conduct was, under all of the circumstances, "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a

pirate," it should know that, for example, 3/4 of the originally-accused products are no longer at issue. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016). The value of such probative facts is not substantially outweighed by any danger articulated under Rule 403. Indeed, TecSec's motion fails to identify any specific purported prejudice. Instead, TecSec merely parrots the language of Rule 403. *Cf.* Dkt. 1199 at 17, *with Meyers v. Asics Corp.*, 974 F.2d 1304, 1308 (Fed. Cir. 1992) (rejecting prejudice arguments because "[c]onclusory statements [of prejudice] are not sufficient" and "none of the defendants state exactly what particular prejudice it suffered").

TecSec's cited cases are both inapposite. Neither involved evidence of dropped claims or products offered to rebut allegations of intent to infringe for either induced or willful infringement claims. In *THK Am. v. NSK, Ltd.*, the court rejected defendant's attempt to introduce "evidence of fraudulent misconduct on the part of the inventor," holding that "evidence bearing exclusively on inequitable conduct" should be heard outside of the jury's presence. No. 90-cv-6049, 1996 WL 33398071, at *1 (N.D. Ill. Jan. 9, 1996). And, in *Corning Inc. v. SRU Biosystems*, the court excluded evidence of "dismissed ***counterclaims*** for invalidity and non-infringement" (and other non-patent counterclaims) offered on "the issue[s] of invalidity and whether this is an exception case under 35 U.S.C. § 285," and Corning's motives for filing suit. No. 03-cv-633, 2005 WL 2465900, at *3 (D. Del. Oct. 5, 2005). The *Corning* court excluded this evidence because after filing the motion, "the parties signed a Covenant-Not-To-Sue dismissing SRU's counterclaims" and "SRU voluntarily dismissed its state law claims." *Id.* TecSec's two cited cases—both of which were decided ***over a decade*** before *Halo*—provide no insight and should be disregarded.

TecSec can solve this issue easily. Its willfulness case, where it gave Adobe no pre-suit notice of infringement and stipulated to non-infringement, is dubious (at best) and, here again, is subject to JMOL after its case-in-chief. But if TecSec insists on pursuing it, the jury should hear

27

"all the circumstances" regarding Adobe's alleged intent to infringe.  TecSec efforts to exclude evidence exculpatory of Adobe's intent would be prejudicial; its motion should be denied.

## VIII.   RESPONSE TO MIL #9: TO PRECLUDE TESTIMONY BY ROY FOLLENDORE

TecSec contends that Adobe should be precluded from presenting six pages of deposition testimony from former TecSec employee Roy Follendore because Adobe's Rule 26 disclosures identify him as having knowledge of two topics purportedly unrelated to that testimony.  That is not how deposition designations work.  TecSec's motion should be denied.

Mr. Follendore worked for TecSec from 1991 to 1995 on its encryption technology. Ex. 18 (Follendore Dep.) at 8:21-9:1, 9:16-10:1.  Adobe first identified Mr. Follendore as a witness with relevant knowledge over eight years ago.  Ex. 19 (5/7/10 Adobe's Rule 26(a)(1) Disclosures) at 4. Adobe updated this disclosure four more times, each time identifying Mr. Follendore as having knowledge of "[p]rior art systems and methods that were publically available and which render the patent-in-suit invalid.  Alleged to have been improperly omitted from patents-in-suit." *See, e.g.*, Dkt. 1200-10 at 5.  Adobe deposed Mr. Follendore on September 12, 2017, and has designated eight pages of his deposition for use at trial.  His designated testimony falls into three categories.

The first category relates to Mr. Follendore's background, his personal and work history. Ex. 18 (Follendore Dep.) at 7:13-18, 7:22-9:1, 9:16-10:1, 11:20-12:8.  The second category relates to his use of Acrobat, including his testimony that he has "used most of the features on Acrobat," that "one of the biggest things Acrobat does [for him] is to take a PDF file and change it so it's typeable," and that he is "not been too interested" in Acrobat's encryption features.  *Id.* at 14:21-15:11, 15:18-16:10.  The third category relates to the state of the art, specifically Mr. Follendore's understanding of "labels" as being "general concepts" and "generalized ideas" that have "been around a really long time."  *Id.* at 22:1-23:2; *see also id.* at 24:1-20 (testifying about the state of

the art relating to "superencryption").[20]  TecSec does not contend that this designated testimony is irrelevant or inadmissible under FRE 403.  Nor could it.[21]  Instead, TecSec contends that it should be excluded because it exceeds the scope of his Rule 26(a)(1) disclosures.  TecSec is wrong.

First, Adobe's disclosure of Mr. Follendore as having knowledge about "[p]rior art systems and methods that were publicly available and which render the patent-in-suit invalid" (Dkt. 1199 at 18) put TecSec on notice that he may testify about the state of the art, especially because he is a former TecSec employee who developed TecSec's encryption technology during the relevant timeframe.  Ex. 18 (Follendore Dep.) at 8:21-9:1, 9:16-10:1.

Second, even if he was not properly disclosed on these topics, Adobe was only required to supplement its Rule 26(a)(1) disclosures "if the additional . . . information has not otherwise been made known to the other parties during the discovery process."  Rule 26(e)(1).  In *Simmons v. Morgan Stanley Smith Barney, LLC*, the court allowed witnesses not identified in Rule 26(a)(1) disclosures to "testify as to matters within the scope of their depositions."  No. 11-cv-2889, 2014 WL 769290, at *9 (S.D. Cal. Feb. 25, 2014); *see also Diehl*, 2004 WL 5509085, at *1.  The Court should do the same here.  The subject information "was made known to [TecSec] during the discovery process"—specifically at Mr. Follendore's deposition—and Adobe was therefore not required to update its Rule 26(a)(1) disclosures.  *See, e.g.*, *Simmons*, 2014 WL 769290, at *9.

Third, even if the Court finds a Rule 26 violation, excluding Mr. Follendore's testimony is unwarranted because Adobe's alleged violation is substantially justified and harmless.  *S. States*, 318 F.3d at 597.  TecSec does not argue it was surprised or prejudiced by these designations, which

---

[20] Adobe designated 17:12-15, 17:19-18:10, 21:2-4 because it shows Mr. Follendore was referring to the 1991 timeframe in his testimony at 22:1-23:2 and 24:1-20.

[21] The second category of testimony is relevant to issues such as the value of the accused features because Mr. Follendore testified he is "not too interested" in Acrobat's encryption features.  *See* Ex. 18 at 14:21-16:10.  The third category of testimony is relevant at least to the state of the art.

are probative of important issues—it was not. Mr. Follendore is a former TecSec employee; he was timely identified; TecSec attended his deposition and had the opportunity to question him. *Cf. Smith v. Loudoun Cty. Pub. Sch.*, No. 15-cv-956, 2016 WL 9943214, at *2 (E.D. Va. Jan. 21, 2016) ("To the extent Defendant's failure to disclose these witnesses could surprise Plaintiff, Plaintiff could have quickly cured that surprise by consulting its own records regarding these witnesses."). Even if TecSec now claims prejudice, it can counter-designate Mr. Follendore's testimony.

Fourth, TecSec's conduct belies its requested relief. For example, TecSec designated deposition testimony from third-parties Thomas Zell and George Johnson, and "may call" its CFO John Petty live at trial, without *ever* identifying them on its Rule 26 disclosures. Dkt. 1192-1 at 2-3; Ex. 20 (10/8/14 TecSec's Updated Disclosures). Here, again, TecSec cannot have it both ways. If the Court is inclined to exclude Mr. Follendore's testimony, it should also exclude any testimony from Messrs. Petty, Zell, and Johnson. *See also* Adobe's MIL #8.

TecSec's other arguments for exclusion also should be rejected. TecSec's argument that testimony about "Mr. Follendore's alleged role as an inventor has no possible relevance" (Dkt. 1199 at 18) misses the mark because Adobe is not presenting his testimony regarding his "alleged role as an inventor." *Infra* at 28. TecSec's argument that his testimony should be excluded because he did not author, and his testimony "does not address," any prior art at issue, also fails. This argument is cut from whole cloth. There is no rule (and TecSec does not identify a rule) requiring Mr. Follendore to have authored, or be discussing, invalidating prior art in order to competently testify about the state of the art. *Cf. Disney Enter., Inc. v. Kappos*, 923 F. Supp. 2d 788, 801 (E.D. Va. 2013) (denying motion *in limine* because "the state of the art around the time of the invention is relevant to the obviousness analysis"). TecSec's arguments fail across the board.

## IX.    CONCLUSION

Adobe respectfully requests the Court deny TecSec's motions *in limine*.

Dated: October 26, 2018                    Respectfully submitted,

                                           By:    */s/ Roman Lifson*
                                                  Maximilian A. Grant  (VSB No. 91792)
                                                  (max.grant@lw.com)
                                                  Tara D. Elliott  (admitted *pro hac vice*)
                                                  (tara.elliott@lw.com)
                                                  Michael A. Morin  (admitted *pro hac vice*)
                                                  (michael.morin@lw.com)
                                                  Rachel Weiner Cohen  (admitted *pro hac vice*)
                                                  (rachel.cohen@lw.com)
                                                  **LATHAM & WATKINS LLP**
                                                  555 Eleventh Street, N.W.
                                                  Suite 1000
                                                  Washington, DC 20004
                                                  Telephone:  (202) 637-2200
                                                  Facsimile:   (202) 637-2201

                                                  Dale Chang  (admitted *pro hac vice*)
                                                  (dale.chang@lw.com)
                                                  **LATHAM & WATKINS LLP**
                                                  330 North Wabash Avenue, Suite 2800
                                                  Chicago, IL 60611
                                                  Telephone:  (312) 876-7700
                                                  Facsimile:   (312) 993-9767

                                                  Brett M. Sandford  (admitted *pro hac vice*)
                                                  (brett.sandford@lw.com)
                                                  **LATHAM & WATKINS LLP**
                                                  140 Scott Drive
                                                  Menlo Park, California 94025
                                                  Telephone:  (650) 328-4600
                                                  Facsimile:   (650) 463-2600

                                                  Michael W. Smith  (VSB No. 01125)
                                                  (msmith@cblaw.com)
                                                  Roman Lifson  (VSB No. 43714)
                                                  (rlifson@cblaw.com)
                                                  **CHRISTIAN & BARTON, LLP**
                                                  909 East Main Street, Suite 1200
                                                  Richmond, Virginia 23219
                                                  Telephone:  (804) 697-4100
                                                  Facsimile:   (804) 697-6112

                                                  *Counsel for Defendant Adobe Inc.*

31

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of October, 2018, a true and correct copy of the foregoing was served using the Court's CM/ECF system, with electronic notification of such filing to all counsel of record:

/s/ Roman Lifson
Roman Lifson  (VSB No. 43714)
(rlifson@cblaw.com)
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia 23219
Telephone:  (804) 697-4100
Facsimile:   (804) 697-6112

*Counsel for Defendant Adobe Inc.*