IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |
|---|---|
| TECSEC, INC., *Plaintiff,* v. ADOBE INC., *et al.*, *Defendants.* | Civil Action No. 1:10-cv-115 Hon. Liam O'Grady |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Adobe Inc.'s Renewed Motion for Judgment as a Matter of Law or, in the Alternative, for a Remittitur (Dkt. 1376) and Plaintiff TecSec, Incorporated's Motion for Prejudgment Interest and Post-Judgment Interest (Dkt. 1378). The motions were fully briefed and the Court heard oral argument on May 2, 2019. For the reasons that follow, and for good cause shown, Defendant Adobe Inc.'s Renewed Motion for Judgment as a Matter of Law or, in the Alternative, for a Remittitur (Dkt. 1376) is hereby **GRANTED** to the extent it seeks judgment as a matter of law of no direct infringement damages and **DENIED** in all other respects; and Plaintiff TecSec, Incorporated's Motion for Prejudgment Interest and Post-Judgment Interest (Dkt. 1378) is hereby **DENIED** as moot.

### I. BACKGROUND

During a five-day trial, Plaintiff TecSec, Incorporated, sought to prove that Defendant Adobe Inc. directly and indirectly infringed TecSec's patented method and system claims for multi-level multi-media encryption technology. After almost two full days of deliberation, the jury entered a verdict partially in favor of TecSec and partially in favor of Adobe. The jury found that TecSec owned the asserted patents and that the patents were valid. It also found that Adobe

directly infringed all the asserted claims during the relevant damages period, but that Adobe did not induce infringement on any of the asserted claims. The jury awarded TecSec $1.75 million for Adobe's direct infringement.

Adobe has now renewed its motion for judgment as a matter of law that (a) the patents are invalid, (b) TecSec has not proven direct infringement of the method claims during the damages period, and (c) TecSec has not proven direct infringement damages. TecSec has moved for pre- and post-judgment interest.

## II. LEGAL STANDARD

Rule 50(b) of the Federal Rules of Civil Procedure allows a party to renew a prior Rule 50(a) motion for judgment as a matter of law ("JMOL") that was denied. "A Rule 50(b) motion should be granted if a district court determines, without weighing the evidence or considering the credibility of the witnesses, that substantial evidence does not support the jury's findings." *Konkel v. Bob Evans Farms Inc.*, 165 F.3d 275, 279 (4th Cir. 1999). "[T]he question is whether a jury, viewing the evidence in the light most favorable to [the prevailing party], 'could have properly reached the conclusion reached by this jury.' If reasonable minds could differ about the result in this case, [the Court] must affirm the jury's verdict." *Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 543 (4th Cir. 2003) (internal citation omitted).

## III. ANALYSIS

### A. The Jury's Finding that the Patents-in-Suit Are Valid.

Adobe has renewed its JMOL motion for a finding that the patents-in-suit are invalid. Issued patents are presumed valid, and that presumption can be overcome only through clear and convincing evidence that the patents are invalid. 35 U.S.C. § 282(a); *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011). "At trial, the jury heard conflicting [expert] testimony" as to whether the patents-in-suit were invalid. *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 848

2

(Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011). The jury's finding of validity had evidentiary support in the record and, "[i]n evaluating the evidence, the jury was free to disbelieve" Adobe's expert, Dr. Clark, and instead credit TecSec's expert, Dr. Jones. *Id.* Further, the jury's validity verdict was not tainted by TecSec's argument that the fact testimony of Mr. Mundy and Mr. Balenson lacked corroboration because corroboration, or lack thereof, is always a relevant factor the jury may consider in evaluating the credibility of a witness's testimony. Therefore, the Court will not overturn the jury's verdict that the patents-in-suit are valid.

### B. The Jury's Finding that Adobe Directly Infringed the Asserted Method Claims During the Relevant Damages Period.

The Court will also not overturn the jury's verdict that Adobe directly infringed the asserted method claims during the relevant damages period, which ran from February 5, 2010 through March 3, 2011. A patentee may prove direct infringement during the relevant damages period through circumstantial evidence. *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1219 (Fed. Cir. 2006). At trial, TecSec introduced sufficient circumstantial evidence for the jury to have reasonably found that Adobe directly infringed the asserted method claims during the damages period.

Mr. Landwehr, Adobe's public sector chief technology officer, testified that he became interested in security at a young age and "[p]retty much [his] entire career" in computer science "has had some aspects intersecting with security." Tr. 755:7–23. Mr. Landwehr also testified that he is a Certified Information Systems Security Professional who frequently discusses security issues with customers, has twice testified before Congress on security topics while at Adobe, and has written "pretty much all" of his approximately one hundred Adobe blog posts on security issues. *Id.* at 756:2–14, 784:8–21. Mr. Landwehr described how to perform multi-level encryption using Adobe Acrobat in a 2009 blog post, which remained posted even at the time of

3

trial, and admitted that he had performed multi-level encryption in preparing that blog post. *Id.* at 787:2–788:7.

A reasonable jury could have inferred that Mr. Landwehr performed the asserted method claims at least once during the relevant damages period because he was a security specialist who promoted the security features of Adobe Acrobat and assisted customers in using those features, he admitted performing the patented methods the year before the damages period, and he taught customers how to perform the patented methods in his 2009 blog post, which was live for the duration of the damages period. *See Mirror Worlds, LLC v. Apple, Inc.*, 784 F. Supp. 2d 703, 715 (E.D. Tex. 2011) (granting JMOL of no direct infringement where the plaintiff failed to "introduce circumstantial evidence that would support a finding of [the defendant's] direct infringement," such as "evidence of [the defendant's] employees testing the method steps" or "documents containing instructions that teach all of the steps of the method claims"); *cf. Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317–19 (Fed. Cir. 2009) (holding that the jury could have reasonably found direct infringement by the defendant's customers from the circumstantial evidence of sales of the defendant's product with manuals teaching customers how to perform the method claims).

As a result, the Court will not overturn the jury's verdict on direct infringement.

### C. The Jury's Award of $1.75 Million for Direct Infringement Damages.

While there was sufficient evidence for the jury to find that Adobe directly infringed during the relevant damages period, there was insufficient evidence to support the $1.75 million damages award for that direct infringement.

"Patent owners who prove infringement are typically awarded at least some amount of damages." *Promega Corp. v. Life Techs. Corp.*, 875 F.3d 651, 666 (Fed. Cir. 2017). Indeed, 35 U.S.C. § 284 states that upon finding infringement, "the court *shall* award" the plaintiff

4

"damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer . . . ." 35 U.S.C. § 284 (2012) (emphasis added).

Yet, "the burden of proving damages falls on the patentee, and the patentee must show his damages by evidence." *Promega*, 875 F.3d at 660 (alterations, internal quotations, and citations omitted). "Damages 'must not be left to conjecture by the jury. They must be proved, and not guessed at.'" *Id.* (quoting *Philp v. Nock*, 84 U.S. 460, 462 (1873)). Thus, 35 U.S.C. § 284 does not require the award of a reasonable royalty "even in the absence of any evidence from which the court," or the jury, "may derive a reasonable royalty." *Devex Corp. v. Gen. Motors Corp.*, 667 F.2d 347, 363 (3d Cir. 1981) (cited with approval in *Promega*, 875 F.3d at 666). "In the absence of any evidence as to what would constitute a reasonable royalty in a given case, a fact finder would have no means of arriving at a reasonable royalty, and none could be awarded." *Id.* at 361; *see also Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1328 (Fed. Cir. 2014) ("[I]n a case completely lacking any evidence on which to base a damages award, the record may well support a zero royalty award."); *Gustafson, Inc. v. Intersys. Indus. Prods., Inc.*, 897 F.2d 508, 509–10 (Fed. Cir. 1990) (finding "no reversible error in the district court's . . . awarding no damages to [the plaintiff] because none were proven"); *Mirror Worlds*, 784 F. Supp. 2d at 724–27 (vacating the jury's direct infringement damages award because the damages award was not sufficiently supported by the record); *Keg Techs., Inc. v. Laimer*, 436 F. Supp. 2d 1364, 1370 (N.D. Ga. 2006) (denying the plaintiffs a monetary damages award because any award "would be an exercise in arbitrary speculation").

A patent owner is also "not entitled to any damages" when it "deliberately takes a risk by relying at trial exclusively on a damages theory that ultimately proves unsuccessful." *Promega*, 875 F.3d at 666. In *Promega*, the Federal Circuit held that a patent owner who sought damages at

5

trial based solely on lost profits for total worldwide sales, and proved infringement for only a subset of those sales, "waived its right to any award based on a reasonable royalty" or "any subset of total worldwide sales." *Id.* at 660, 662–63. It follows that a patent owner who pursues an all-or-nothing damages theory based on sales to customers and fails to present evidence of a reasonable royalty based solely on the defendant's own use, waives its right to recover direct infringement damages. *Mirror Worlds*, 784 F. Supp. 2d at 724–25 (vacating a jury's damages award where the plaintiff was only entitled to recover direct infringement damages, but the plaintiff's damages theory was based solely on the defendant's sales to customers and the plaintiff did not present any evidence of a reasonable royalty based solely on the defendant's own use of the patented technology).

At trial, TecSec pursued a damages theory tied solely to Adobe's sales of Adobe Acrobat to customers. Because Adobe Acrobat does not infringe TecSec's system claims until it is installed, the testimony of a reasonable royalty based on sales to customers alone cannot support any award of direct infringement damages.

In denying Adobe's earlier JMOL motion regarding failure to prove direct infringement damages, the Court opined that "while there was no direct testimony on direct infringement damages, the jury should be given the opportunity to determine whether" the testimony of TecSec's damages expert, Mr. Wagner, "could also serve as a basis to find direct infringement damages." Dkt. 1373 at 2. The Court believed that there may have been evidence adduced at trial that would have allowed the jury to apply a reasonable royalty rate derived from the damages experts' testimony to a royalty base tied solely to Adobe's own use of Adobe Acrobat. Now that the Court has had the opportunity to review the record and the more thorough arguments of counsel, the Court finds that the damages experts' testimony could not have served as a basis for an award of direct infringement damages as a matter of law.

6

For the jury to have non-speculatively found direct infringement damages based on the damages experts' testimony at trial, TecSec would have needed to introduce evidence of a royalty base tied solely to Adobe's own use of Adobe Acrobat against which the jury could have applied a reasonable royalty rate derived from the experts' testimony. But there was no evidence at trial to establish such a royalty base. For example, there was no testimony regarding the number of Adobe employees in the United States or the number of times Adobe Acrobat was installed by Adobe employees during the damages period. As a result, the jury could not have relied on the damages experts' testimony to arrive at $1.75 million in direct infringement damages without impermissible speculation.

There is also insufficient evidence in the record to support remitting the jury's damages award to $200,000 – the maximum cost Adobe would have incurred to design around the asserted patents in April 2001, the date of the hypothetical negotiation between Adobe and TecSec. As an initial matter, "damages awarded for patent infringement 'must reflect the value attributable to the infringing features of the product, and no more.'" *Commonwealth Sci. & Indus. Research Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015) (quoting *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014)). The cost to design around TecSec's patents is not tied to the value of TecSec's invention.[1] Furthermore, even if the $200,000 cost to design around the asserted patents could support a damages award, it cannot support an award for direct infringement damages alone because any apportionment of the cost between Adobe's own use of Adobe Acrobat and Adobe's sales of Adobe Acrobat to customers would be inherently speculative.

---

[1] Indeed, the evidence adduced at trial demonstrated, at most, a *de minimis* value of TecSec's invention to Adobe; there was only circumstantial evidence that one or two Adobe employees even knew the infringing capability existed prior to this litigation.

7

The only other evidence of an appropriate amount of direct infringement damages is Dr. Jones's testimony that an award of "a couple hundred dollars . . . would seem reasonable" to compensate TecSec for Adobe's direct infringement of the asserted method claims during the damages period. Tr. at 547:14–25. Yet, Dr. Jones's opinion regarding a reasonable damages award for Adobe's direct infringement during the relevant damages period was also inherently speculative. Dr. Jones twice stated that he "would have to defer to the damages experts" regarding a reasonable award for Adobe's direct infringement of the asserted method claims. *Id.* at 547:24–25; *see also id.* at 546:3. Dr. Jones also stated that he does not know how damages are calculated, and when asked if the proper damages award could be lower than a couple hundred dollars, he responded: "It could be, I just don't know." *Id.* at 546:3–6. As a result, the record is also devoid of qualified testimony regarding appropriate damages for Adobe's direct infringement of the asserted method claims during the relevant damages period.

Accordingly, the Court finds that the jury's damages award of $1.75 million must be vacated in its entirety as inherently speculative and unsupported by the record.

The Court also finds that TecSec is not entitled to a new trial to establish direct infringement damages above zero dollars. "[R]e-presenting this issue to the jury would [be] pointless because, as a matter of law," an award of zero damages is the maximum award supported by the evidence adduced at trial. *Tronzo v. Biomet, Inc.*, 236 F.3d 1342, 1351 (Fed. Cir. 2001).[2] "When a plaintiff deliberately takes a risk by relying at trial exclusively on a damages theory that ultimately proves unsuccessful, and, when challenged, does not dispute that it failed to present an alternative case for damages, a district court does not abuse its discretion

---

[2] The Fourth Circuit and Federal Circuit both have "a 'maximum recovery rule' which remits an excessive jury award to the highest amount the jury could 'properly have awarded based on the relevant evidence.'" *Shockley v. Arcan, Inc.*, 248 F.3d 1349, 1362 (Fed. Cir. 2001) (quoting *Unisplay, S.A. v. Am. Elec. Sign Co.*, 69 F.3d 512, 519 (Fed. Cir. 1995)).

8

by declining to give that plaintiff multiple chances to correct deficiencies in its arguments or the record." *Promega*, 875 F.3d at 666.

### D. TecSec's Motion for Pre- and Post-Judgment Interest.

Having found that the jury's award of damages must be overturned in its entirety, TecSec's motion for interest on the damages award is moot.

## IV. CONCLUSION

For the reasons stated above, and for good cause shown, Defendant Adobe Inc.'s Renewed Motion for Judgment as a Matter of Law or, in the Alternative, for a Remittitur (Dkt. 1376) is hereby **GRANTED** to the extent it seeks judgment as a matter of law of no direct infringement damages and **DENIED** in all other respects. Accordingly, the jury's award of damages is hereby **VACATED**.

It is further **ORDERED** that Plaintiff TecSec, Incorporated's Motion for Prejudgment Interest and Post-Judgment Interest (Dkt. 1378) is hereby **DENIED** as moot.

It is **SO ORDERED**.

June 18, 2019
Alexandria, Virginia

Liam O'Grady
United States District Judge

9